**ORIGINAL FILED**
DEC 14 PM 12:18
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**SEALED BY COURT ORDER**

MELISSA GOODMAN (NY SB # 4224339)
mgoodman@aclu.org
JAMEEL JAFFER (NY SB # 3064101)
jjaffer@aclu.org
L. DANIELLE TULLY (NY SB # 4334512)
dtully@aclu.org
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004-2400
Telephone: (212) 549-2500
Facsimile: (212) 549-2680

ANN BRICK (SB # 65296)
abrick@aclunc.org
American Civil Liberties Union Foundation
of Northern California, Inc.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

CINDY COHN (SB # 145997)
cindy@eff.org
KURT OPSAHL (SB # 191303)
kurt@eff.org
MARCIA HOFMANN (SB # 250087)
marcia@eff.org
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Counsel for Plaintiffs
*Pro hac vice applications to be filed upon the assignment of this case to a judge.

CW

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| INTERNET ARCHIVE; AMERICAN CIVIL LIBERTIES UNION; AMERICAN CIVIL LIBERTIES UNION FOUNDATION; AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA, INC.; AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA, INC.; and ELECTRONIC FRONTIER FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL B. MUKASEY, in his official capacity as Attorney General of the United States; ROBERT S. MUELLER III, in his official capacity as Director of the Federal Bureau of Investigation; and ARTHUR M. CUMMINGS II, in his official capacity as Deputy Assistant Director of the Counterterrorism Division of the Federal Bureau of Investigation,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**DOCUMENT SUBMITTED UNDER SEAL** |

1. Plaintiffs the Internet Archive ("the Archive"), the American Civil Liberties Union ("ACLU"), the American Civil Liberties Union Foundation ("ACLUF"), the American Civil Liberties Union of Northern California, Inc. ("ACLU-NC"), the American Civil Liberties Union Foundation of Northern California, Inc. ("ACLUF-NC"), and the Electronic Frontier Foundation ("EFF") challenge the facial and as-applied constitutionality of 18 U.S.C. §§ 2709, 3511 (collectively, "the NSL statute"), which authorize the Federal Bureau of Investigation ("FBI") to issue national security letters ("NSLs") and to impose broad and effectively permanent non-disclosure obligations on those served with NSLs. *See* 18 U.S.C. §§ 2709, 3511, as amended by the USA PATRIOT Act, Pub. L. 107-56 ("Patriot Act"); by the USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. 109-177 ("PIRA"); and by the USA PATRIOT Act Additional Reauthorizing Amendments Act of 2006, Pub. L. 109-178 ("ARAA").

2. The Archive is a digital library co-founded by Brewster Kahle and incorporated as a 501(c)(3) non-profit organization in California. An agent of the FBI served an NSL (the "November 2007 NSL") on the Archive through its legal representative, EFF, on November 26, 2007. The November 2007 NSL directed the Archive to disclose records pertaining to one of its patrons. The November 2007 NSL also referenced the NSL statute's gag provisions codified in 18 U.S.C. §§ 2709(c), 3511(b), and expressly prohibited the Archive, its officers, employees, and agents from disclosing that the FBI had demanded information from it through the NSL.

3. The NSL statute is unconstitutional because its gag and secrecy provisions violate the First and Fifth Amendments and because those provisions are not severable from the remainder of the NSL statute. The statute allows the FBI to issue gag orders prohibiting NSL recipients from disclosing that the FBI has sought or obtained information from them. The gag orders are issued by the FBI unilaterally, without prior judicial review. While the statute permits NSL recipients to challenge gag orders in court, reviewing courts are permitted to modify or vacate such orders only in extraordinary circumstances, and in some instances they are required to treat the FBI's certification that secrecy is necessary as conclusive. In

addition, the NSL statute throws a heavy blanket of secrecy over litigation relating to NSLs. Notably, the one court that has already considered the constitutionality of the NSL statute concluded that the law's gag provisions violate the First Amendment and the principle of separation of powers, and that the entire statute is unconstitutional because those gag provisions are not severable. *Doe v. Gonzales*, 500 F. Supp.2d 379 (S.D.N.Y. 2007).

4. For these reasons and others set forth below, Plaintiffs seek, *inter alia*, a declaration that the NSL statute is unconstitutional on its face and an injunction prohibiting the FBI from issuing NSLs under the statute. Plaintiffs also seek a declaration that the November 2007 NSL is unconstitutional and an injunction prohibiting the FBI from enforcing it. The Archive would comply with a lawful demand for information and in the past has complied with lawful government subpoenas. It should not, however, be required to comply with demands issued under a statute that is unconstitutional on its face.

## JURISDICTION AND VENUE

5. This case arises under the United States Constitution and the laws of the United States and presents a federal question under Article III of the United States Constitution and 28 U.S.C. § 1331. The Court also has authority to grant declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* The Court has authority to award costs and attorneys' fees under 28 U.S.C. § 2412.

6. Venue is proper in this district under 28 U.S.C. § 1391(e).

## INTRADISTRICT ASSIGNMENT

7. This case is properly assigned to the San Francisco Division pursuant to Civil Local Rule 3-2(c) and (d) because a substantial portion of the events giving rise to this action occurred in the County of San Francisco.

//
//

## PARTIES

8. The Archive is a digital library founded in 1996, incorporated as a 501(c)(3) non-profit organization with its principal place of business in San Francisco, California. The Archive offers permanent access for researchers, historians, and scholars to its vast and growing collections of books, videos, web pages, software and other digital information. The Archive sues on its own behalf.

9. Plaintiff ACLU is a nationwide, non-profit, non-partisan organization with more than 500,000 members dedicated to the constitutional principles of liberty and equality. The ACLU is a 501(c)(4) organization. The ACLU's activities include lobbying Congress on legislation that affects civil liberties, analyzing and educating the public about such legislation, and mobilizing ACLU members and activists to lobby their legislators to protect civil rights and civil liberties. The ACLU sues on its own behalf and on behalf of its members.

10. Plaintiff ACLUF is a 501(c)(3) organization that educates the public about civil liberties and that employs lawyers who provide legal representation free of charge in cases involving civil liberties. As counsel to the Archive and privy to the information contained in the NSL served on the Archive, lawyers employed by ACLUF are subject to the NSL statute's gag provisions.

11. Plaintiff ACLU-NC is the largest regional affiliate of the ACLU, with more than 50,000 members. The ACLU-NC is a 501(c)(4) organization. The ACLU-NC's activities include lobbying the state legislature and members of the Northern California Congressional delegation on legislation that affects civil liberties, analyzing and educating the public about such legislation, and mobilizing ACLU-NC members and activists to lobby their legislators to protect civil rights and civil liberties. The ACLU-NC sues on its own behalf and on behalf of its members.

12. Plaintiff ACLUF-NC is a 501(c)(3) organization that educates the public about civil liberties and that employs lawyers who provide legal representation free of charge in cases involving civil liberties. As counsel to the Archive and privy to the information contained in

1  the NSL served on the Archive, lawyers employed by ACLUF-NC are subject to the NSL statute's gag provisions.

13. Plaintiff EFF is a non-profit civil liberties organization working to protect rights in the digital world. EFF actively encourages and challenges industry and government to support free expression and privacy in the information society. Founded in 1990, EFF is based in San Francisco, California. As counsel to the Archive and privy to the information contained in the NSL served on the Archive, lawyers employed by EFF are subject to the NSL statute's gag provisions.

14. Defendant Attorney General Michael Mukasey heads the United States Department of Justice ("DOJ"), which is the agency of the United States government responsible for enforcing federal criminal laws and overseeing domestic intelligence investigations. Defendant Mukasey has ultimate authority for supervising all of the DOJ's operations and functions. The DOJ includes the FBI, the agency authorized to use the law challenged in this case.

15. Defendant Robert Mueller is the Director of the FBI and is responsible for supervising all of that agency's operations. The FBI is the agency authorized to use the law challenged in this case.

16. Defendant Arthur M. Cummings II is a Deputy Assistant Director of the FBI's Counterterrorism Division. Defendant Cummings signed the November 2007 NSL issued to the Archive.

## STATUTORY BACKGROUND

### The NSL Authority

17. The NSL statute was enacted by Congress in 1986 as part of the Electronic Communications Privacy Act of 1986. *See* Pub. L. 99-508, Title II, § 201 (codified as 18 U.S.C. § 2510 *et seq.*). As described further below, the NSL statute has been modified multiple times since its initial passage.

-5-

18. In its current form, the NSL statute authorizes the FBI to issue NSLs ordering "wire or electronic communication service provider[s]" to disclose "subscriber information," "toll billing records information," and "electronic communication transactional records" upon a certification that the information sought is "relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities." 18 U.S.C. §§ 2709(a), (b)(1). The NSL statute also allows the FBI to impose non-disclosure obligations, or gag orders, on anyone it serves with an NSL.

19. As originally enacted, the NSL statute could be used exclusively against people suspected of espionage. The FBI could issue NSLs only if it certified that (i) the information sought was relevant to an authorized foreign counterintelligence investigation; *and* (ii) there were specific and articulable facts establishing reason to believe that the subject of the NSL was a foreign power or foreign agent. 18 U.S.C. § 2709 (1986). Congress subsequently amended the statute in 1993 and 1996, each time extending its reach. *See* Pub. L. 103-142 (1993); Pub. L. 104-293, Title VI, § 601(a) (1996).

20. In 2001, through the Patriot Act, Congress expanded the FBI's power to issue NSLs once again by, *inter alia*, removing the individualized suspicion requirement. Pub. L. 107-56, Title V, § 505(a). The NSL statute now permits the FBI to issue an NSL if the information sought is believed to be "relevant" to "an authorized investigation to protect against international terrorism or clandestine intelligence activities." *See* 18 U.S.C. § 2709(b)(1). Consequently, the FBI may now use NSLs to obtain sensitive information about innocent individuals who have no connection to terrorism or espionage. The statute does not require the FBI to seek judicial approval prior to issuing an NSL.

21. Pursuant to amendments made to the NSL statute in 2006, the Attorney General may compel compliance with the NSL request by "invok[ing] the aid of any district court of the United States within the jurisdiction in which the investigation is carried on or the person or entity [served with the NSL] resides, carries on business, or may be found." 18 U.S.C.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

§ 3511(c). If a court issues an order requiring compliance with an NSL, non-compliance may be punished by the court as contempt. *Id.*

22. Although NSL recipients were initially prohibited from challenging NSLs, Congress amended the statute in 2006 to permit those served with NSLs to "petition for an order modifying or setting aside the request." *Id.* § 3511(a). If the recipient of an NSL files such a petition, the reviewing court may modify or set aside the NSL "if compliance would be unreasonable, oppressive, or otherwise unlawful." *Id.*

### Gag and Secrecy Provisions

23. In its current form, the NSL statute allows the Director of the FBI or his designee (including a Special Agent in Charge of a Bureau field office) to impose a broad and effectively permanent non-disclosure order – or gag order – on any person or entity served with an NSL. 18 U.S.C. § 2709(c).

24. The Director or his designee can impose this gag order simply by "certifying" to himself or herself that, absent the non-disclosure obligation, "there may result a danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person." *Id.* § 2709(c)(1). Once the Director of the FBI or his designee so certifies and notifies the NSL recipient, the recipient of the NSL is prohibited from "disclos[ing] to any person (other than those to whom such disclosure is necessary to comply with the request or an attorney to obtain legal advice or legal assistance with respect to the request) that the [FBI] has sought or obtained access to information or records under [the NSL statute]." *Id.* The gag order extends to any person consulted in order to comply with the NSL, and to any attorney consulted for legal advice or assistance with respect to the request. *Id.*

25. The gag order is imposed upon the FBI's certification. No judge considers, before the gag order is imposed, whether secrecy is necessary or whether the gag order is narrowly tailored.

26. The gag provisions permit the recipient of an NSL to petition a court "for an order modifying or setting aside a nondisclosure requirement." *Id.* § 3511(b)(1). The reviewing court, however, may modify or set aside the nondisclosure requirement only if it finds that there is "no reason to believe that disclosure may endanger the national security of the United States, interfere with a criminal, counterterrorism, or counterintelligence investigation, interfere with diplomatic relations, or endanger the life or physical safety of any person." *Id.* § 3511(b)(2). If a designated senior government official certifies that "disclosure may endanger the national security of the United States or interfere with diplomatic relations," the certification must be "treated as conclusive unless the court finds that the certification was made in bad faith." *Id.*

27. In the case of a petition filed under § 3511(b)(1) "one year or more after the request for records," the FBI Director or his designee must either terminate the non-disclosure obligation within 90 days or recertify that disclosure may result in one of the enumerated harms. *Id.* § 3511(b)(3). If the FBI recertifies that disclosure may be harmful, however, the reviewing court is required to apply the same extraordinarily deferential standards it applies to petitions filed within one year. *Id.* If a designated senior official recertifies that disclosure may endanger the national security of the United States or interfere with diplomatic relations the recertification must be "treated as conclusive unless the court finds that the recertification was made in bad faith." *Id.*

28. Those who violate a gag order issued under the NSL statute may be subject to criminal penalties. *See* 18 U.S.C. § 1510(e) ("Whoever, having been notified of the applicable disclosure prohibitions or confidentiality requirements of [the NSL statute] . . . knowingly and with the intent to obstruct an investigation or judicial proceeding violates such prohibitions or requirements applicable by law to such person shall be imprisoned for not more than five years, fined under this title, or both.").

29. Petitions challenging NSL record demands and gag orders are required by the PIRA and ARAA to be heard in extraordinary secrecy. A reviewing court must "close any

-8-
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

hearing to the extent necessary to prevent an unauthorized disclosure of a request for records." 18 U.S.C. § 3511(d). The court must also keep petitions, records, filings, orders and subpoenas under seal "to the extent and as long as necessary to prevent the unauthorized disclosure." *Id.* Upon request of the government, the reviewing court is also required to "review *ex parte* and *in camera* any government submission or portions thereof, which may include classified information." *Id.* § 3511(e).

## FACTUAL BACKGROUND

30. The Archive was established as a digital library in 1996. Its overarching mission is to provide universal access to all knowledge. Located and incorporated as a 501(c)(3) non-profit in California, the Archive is governed by a three-member board of directors. The Archive has more than one hundred employees.

31. The Archive is not a traditional library, but it is a library nonetheless. It is formally recognized as a library by the State of California, enabling it to satisfy the statutory definition of a library found in the 1996 Library Services and Technology Act, 20 U.S.C. § 9122(1)(E). The Archive has been a member of the American Library Association since 2000.

32. To fulfill its mission, the Archive works with national libraries, museums, universities, and the general public to collect and offer free access to materials in digital format. Some of its partners include the Library of Congress, the National Archives, and the British Library. The Archive has collected snapshots of billions of public web pages, except those that have opted not to be archived, every two months for the last ten years. In addition, the Archive has digitized archival and educational movies since 1999. The Archive also accepts donated material, including audio and video recordings, from individual patrons. To ensure continued access, the Archive provides permanent, archival storage and preservation services for this extensive digital material.

33. The Archive has been involved in several book digitization projects and has formed the Open Content Alliance, which includes contributions from more than seventy contributing libraries, to build joint collections of digitized public domain books. The Archive's book collection now contains over 200,000 volumes.

34. As a library, the Archive actively works to serve its patrons as a resource for exploration, research, and learning. Many of the Archive's resources come from patrons' donations. Providing a safe environment for patrons' activities has long been an important function of libraries with physical materials. The Archive seeks to continue this practice for those patrons interacting with digital materials through its website.

35. Just as an individual may anonymously walk into a non-digital library and browse its shelves, an individual wishing to view digital materials may browse those materials on the Archive's website as an "anonymous user" – that is to say, without logging in to the website. However, individuals who would like to upload materials, post reviews, or communicate on message boards must first register with the Archive and be logged into his or her account. To register, an individual must agree to "Terms of Use," provide a "valid" (although unverified) e-mail address, create a password, and supply a screen name.

### The November 2007 NSL

36. The Archive has worked with various federal government agencies, including the DOJ, the FBI, and the Central Intelligence Agency. Many U.S. Attorneys and other law enforcement officials find the Archive a valuable resource, and the Archive has regularly received requests for information about its collections (most frequently, for information stored in the Wayback Machine, a historical archive of websites).

37. In July of 2007, Special Agent Scott Rakowitz and Supervisory Special Agent Chuck Esposito of the San Francisco office of the FBI met with EFF, whose attorneys represent the Archive for various purposes. At that meeting, EFF agreed that it would accept service of legal process from the United States on behalf of the Archive.

38. On Monday, November 26, 2007, Supervisory Special Agent ▉ left a voicemail message for Kurt Opsahl, a Senior Staff Attorney at EFF. Similar messages were left with Senior Staff Attorney Lee Tien and Staff Attorney Kevin Bankston. The messages informed them that an FBI agent would be coming to EFF's office that day. Bankston returned the message, spoke with Supervisory Special Agent ▉ and learned that an FBI agent would be serving an NSL at EFF's office.

39. Later that morning, Special Agent ▉ arrived at EFF's office, met with Bankston, and served an NSL dated November 19, 2007 ("November 2007 NSL"). The November 2007 NSL is printed on FBI letterhead, is addressed to the Internet Archive, and is signed by Arthur M. Cummings II, Deputy Assistant Director, Counterterrorism Division of the FBI.

40. The November 2007 NSL letter states that the Archive is "hereby directed to provide the [FBI] the subscriber's name, address, length of service, and electronic communication transactional records, to include existing transaction/activity logs and all electronic mail (e-mail) header information (not to include message content and/or subject fields)" pertaining to ▉
▉

41. The November 2007 NSL also includes a certification that "the information sought is relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities."

42. Parroting the language of the NSL statute's gag certification provision, the November 2007 NSL includes a certification that the "disclosure of the fact that the FBI has sought or obtained access to the information sought by this letter may endanger the national security of the United States, interfere with a criminal, counterterrorism, or counterintelligence investigation, interfere with diplomatic relations, or endanger the life or physical safety of a person." The certification does not specify which of these harms may result from disclosure.

43. The November 2007 NSL further advises the Archive that the NSL statute "prohibits you, or any officer, employee, or agent of yours, from disclosing this letter, other than to those to whom disclosure is necessary to comply with the letter or to an attorney to obtain legal advice or legal assistance with respect to this letter."

44. Appended to the November 2007 NSL is a page titled "ATTACHMENT" that states, "In preparing your response to this National Security Letter, you should determine whether your company maintains the following types of information which may be considered by you to be an electronic communications transactional record in accordance with Title 18 United States Code Section 2709." The page then lists, among other things ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and "Any other information which you consider to be an electronic communication transactional record."

45. The November 2007 NSL requires that the Archive provide the requested information "personally to a representative of the FBI ▮▮▮▮ or through use of delivery service or through secure fax within fourteen (14) business days of receipt of this letter."

46. On Tuesday, November 27, 2007, Opsahl and EFF Staff Attorney Marcia Hofmann brought the November 2007 NSL to the Archive and showed it to Brewster Kahle, Chair of the Archive's Board of Directors as well as one of the Archive's Digital Librarians.

47. On Wednesday, November 28, 2006, Special Agent ▮▮▮ left a message for Bankston inquiring about the status of the Archive's response. Later that day, Opsahl spoke by telephone with Special Agent ▮▮▮ and informed him that the Archive was reviewing and considering the letter, and notified him, pursuant to 18 U.S.C. § 2709(c)(4), that the Archive would be bringing in additional counsel.

48. The NSL statute and the November 2007 NSL have prevented the Archive from disclosing information about the November 2007 NSL and this lawsuit to the Archive's Board of Directors and staff.

-12-

49. The NSL statute and the November 2007 NSL have prevented the Archive from disclosing information about the November 2007 NSL and this lawsuit to the Archive's patrons.

50. The NSL statute and the November 2007 NSL have prevented the Archive from disclosing information about the November 2007 NSL and this lawsuit to other libraries.

51. The NSL statute and the November 2007 NSL have prevented the plaintiffs from disclosing information about the November 2007 NSL and this lawsuit to the press and public.

52. The NSL statute and the November 2007 NSL have prevented the plaintiffs from disclosing information about the November 2007 NSL to Congress, where bills to amend the NSL statute are currently pending in both the House and Senate. The NSL statute and the November 2007 NSL have prevented the plaintiffs from publicly advocating for legislative change with respect to the NSL statute.

## CAUSES OF ACTION

53. The NSL statute, on its face and as applied through the November 2007 NSL, violates the First Amendment by investing the FBI with the authority to suppress speech without meaningful judicial review, unconstrained by definite and objective standards, and without requiring that gag orders issued under the statute be narrowly tailored to a compelling government interest.

54. The NSL statute, on its face and as applied through the November 2007 NSL, violates the principle of separation of powers by effectively transferring to the executive branch the final authority to determine whether speech should or should not be suppressed.

55. The NSL statute, on its face and as applied through the November 2007 NSL, violates the First and Fifth Amendments by requiring courts that review non-disclosure orders and challenges to NSLs to close hearings and seal judicial documents even where there is no compelling need for secrecy.

56. The NSL statute, on its face and as applied through the November 2007 NSL, violates the First and Fifth Amendments by requiring courts that review non-disclosure orders and challenges to NSLs to review government filings *ex parte* and *in camera* upon the government's request.

57. The gag order imposed by the November 2007 NSL is unlawful because it fails to certify the specific harm that may result from disclosure.

58. The November 2007 NSL is unlawful because the Archive is not an electronic communication service provider.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully request that the Court:

1. Declare that 18 U.S.C. §§ 2709(c) and 3511(b) violate the First Amendment and the principle of separation of powers.
2. Declare that 18 U.S.C. §§ 3511(d) and 3511(e) violate the First and Fifth Amendments.
3. Declare that 18 U.S.C. §§ 2709(c) and 3511(b) are not severable from the remainder of the NSL statute.
4. Declare that the November 2007 NSL is unconstitutional under the First and Fifth Amendments and under the principle of separation of powers.
5. Permanently enjoin the defendants from seeking to enforce the November 2007 NSL or from penalizing plaintiffs for failing to comply with it.
6. Permanently enjoin the defendants from using the NSL statute against the plaintiffs or any other person or entity.

//
//
//
//

1   7.  Award the plaintiffs fees and costs.

2   8.  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

MELISSA GOODMAN
JAMEEL JAFFER
L. DANIELLE TULLY
American Civil Liberties Union
 Foundation
National Security Project

ANN BRICK
American Civil Liberties Union
 Foundation of Northern California,
 Inc.

By: /s/ Ann Brick
ANN BRICK
Counsel for Plaintiffs

CINDY COHN
KURT OPSAHL
MARCIA HOFMANN
Electronic Frontier Foundation

By: /s/ Marcia Hofmann
MARCIA HOFMANN
Counsel for Plaintiffs

December 14, 2007

-15-
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF