ORIGINAL
FILED

07 DEC 14 PM 12: 19

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  MELISSA GOODMAN (NY SB # 4224333)*
   mgoodman@aclu.org
2  JAMEEL JAFFER (NY SB # 3064201)*
   jjaffer@aclu.org
3  L. DANIELLE TULLY (NY SB # 4334512)*
   dtully@aclu.org
4  American Civil Liberties Union Foundation
   125 Broad Street, 18th Floor
5  New York, NY 10004-2400
   Telephone: (212) 549-2500
6  Facsimile: (212) 549-2680

7  ANN BRICK (SB # 65296)
   abrick@aclunc.org
8  American Civil Liberties Union Foundation
      of Northern California, Inc.
9  39 Drumm Street
   San Francisco, CA 94111
10 Telephone: (415) 621-2493
   Facsimile: (415) 255-8437

CINDY COHN (SB # 145997)
cindy@eff.org
KURT OPSAHL (SB # 191303)
kurt@eff.org
MARCIA HOFMANN (SB # 250087)
marcia@eff.org
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

SEALED
BY COURT ORDER

11 Counsel for Petitioner
12 *Pro hac vice applications to be filed upon the assignment of this case to a judge.

CW

13            UNITED STATES DISTRICT COURT
14         FOR THE NORTHERN DISTRICT OF CALIFORNIA
               SAN FRANCISCO DIVISION

15 INTERNET ARCHIVE; AMERICAN CIVIL          )   Case No. _____
16 LIBERTIES UNION; AMERICAN CIVIL           )
   LIBERTIES UNION FOUNDATION;               )
17 AMERICAN CIVIL LIBERTIES UNION OF         )   MEMORANDUM OF POINTS AND
   NORTHERN CALIFORNIA, INC.;                )   AUTHORITIES IN SUPPORT OF
18 AMERICAN CIVIL LIBERTIES UNION            )   PETITION OF PLAINTIFF INTERNET
   FOUNDATION OF NORTHERN                    )   ARCHIVE TO SET ASIDE NATIONAL
19 CALIFORNIA, INC.; and ELECTRONIC          )   SECURITY LETTER
   FRONTIER FOUNDATION,                      )
20                          Plaintiffs,      )
                                             )   DOCUMENT SUBMITTED UNDER
21       v.                                  )   SEAL
                                             )
22 MICHAEL B. MUKASEY, in his official       )
   capacity as Attorney General of the United )
23 States; ROBERT S, MUELLER III, in his     )
   official capacity as Director of the Federal )
24 Bureau of Investigation; and ARTHUR M.    )
   CUMMINGS II, in his official capacity as  )
25 Deputy Assistant Director of the          )
   Counterterrorism Division of the Federal Bureau )
26 of Investigation,                         )
                                             )
27                          Defendants.      )
   _____ )
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION
TO SET ASIDE NATIONAL SECURITY LETTER

1

**TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES..................................................................................................ii

INTRODUCTION ...............................................................................................................1

STATEMENT OF FACTS ...................................................................................................2

    A. The Internet Archive. ..............................................................................................2

    B. The November 2007 National Security Letter. ........................................................3

ARGUMENT .......................................................................................................................

I.      THE NOVEMBER 2007 NSL IS NOT AUTHORIZED BY 18 U.S.C. § 2709 ...............6

    A. The Archive Is A User, Not A Provider of An Electronic Communication
       Service.................................................................................................................... 6

    B. In Allowing Patrons ███████████████████████ the Archive Is
       Providing Storage and Preservation Services and Therefore Is Not an ECS
       Provider ..................................................................................................................9

II.    THE ARCHIVE IS NOT SUBJECT TO THE NOVEMBER 2007 NSL
      BECAUSE IT IS A LIBRARY PURSUANT TO 18 U.S.C. § 2709(F) ..........................11

III.   THE NOVEMBER 2007 NSL IS UNCONSTITUTIONAL BECAUSE IT
      VIOLATES THE FIRST AMENDMENT .......................................................................12

CONCLUSION ...................................................................................................................13

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

# TABLE OF AUTHORITIES

## FEDERAL CASES

3   *Crowley v. Cybersource Corp.*, 166 F.Supp.2d 1263 (N.D. Cal. 2001)..........................................7

4   *Doe v. Gonzales*, 500 F.Supp.2d 379 (S.D.N.Y. 2007), *appeal pending* .............................1, 10, 12

5   *In re Doubleclick Privacy Litigation*, 154 F.Supp.2d 497 (S.D.N.Y. 2001) ...............................7, 8

6   *Dyer v. Northwest Airlines Corporations*, 334 F.Supp.2d 1196 (D.N.D. 2004)..........................7

7   *In re Broadcast.com, Inc.*, 2001 WL 36050382 (E.D. Tex. 2001)........................................7

8   *In re JetBlue Airways Corp. Privacy Litigation*, 379 F.Supp.2d 299 (E.D.N.Y. 2005)..............7, 8

9   *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002).....................................11

10  *Quon v. Arch Wireless Operating Company, Inc.*, 445 F.Supp.2d 1116 (C.D. Cal.

11  2006) ..............................................................................................9, 10, 11

12  *United States v. Mullins*, 992 F.2d 1472 (9th Cir. 1993)..............................................8

13  *United States v. Steiger*, 318 F.3d 1039 (11th Cir. 2003) ............................................10

14  *United States. v. Jackson*, 2007 WL 3230140 (D.D.C. 2007)................................................10

15   ## FEDERAL STATUTES

16  18 U.S.C. § 2510 ..............................................................................................6, 11

17  18 U.S.C. § 2709 ....................................................................................................*passim*

18  18 U.S.C. § 2711 ...................................................................................................6

19  18 U.S.C. § 3511 ................................................................................................1, 12

20  20 U.S.C. § 9122 ...........................................................................................9, 11

21   ## MISCELLANEOUS

22  Orin S. Kerr, *A User's Guide to the Stored Communications Act—and a Legislator's*

23  *Guide to Amending It*, 72 Geo.Wash.L.Rev. 1208 (2004) ...........................................9

24  S. Rpt. No. 99-541 (1986) ..............................................................................9

25  U.S. Dep't of Justice, Criminal Division, Computer Crime and Intellectual Property

26  Section, *Searching and Seizing Computers and Obtaining Electronic Evidence in*

27  *Criminal Investigations* (July 2002).........................................................9

28

**INTRODUCTION**

1
2      On November 26, 2007, an agent of the Federal Bureau of Investigation ("FBI") served a
3  National Security Letter ("NSL") pursuant to 18 U.S.C. § 2709 on petitioner Internet Archive
4  ("Archive"), demanding that it turn over records about one of its patrons. An NSL is akin to an
5  administrative subpoena. Through NSLs, the FBI can demand records from an electronic
6  communication service provider so long as the FBI certifies that the information sought is relevant
7  to a counter-terrorism or counter-intelligence investigation. *See* 18 U.S.C. § 2709(a)-(b). The
8  NSL statute also permits the FBI to impose broad and effectively permanent gag orders on an NSL
9  recipient. *See* 18 U.S.C. § 2709(c). Where the FBI certifies that certain harms may result from
10  disclosure, *see* 18 U.S.C. § 2709(c), the recipient is prohibited from disclosing that the FBI has
11  sought or obtained information. *Id.* The NSL served on the Archive ("November 2007 NSL")
12  demanded that it disclose the subscriber name, address, length of service, and electronic
13  communication transactional records related to ██████████████████████
14  ████████████ the Archive's services. It also imposed a gag order on the Archive, its
15  officers, its employees, and its agents.
16      As authorized by 18 U.S.C. § 3511(a), the Archive asks this Court to issue an order setting
17  aside the NSL on the ground that the demand for records is unlawful for several reasons. First,
18  section 2709 only authorizes the issuance of an NSL to an electronic communication service
19  provider. But the Archive is not such a provider for two reasons: (1) in permitting patrons to
20  upload materials to the site, the Archive is not acting as a *provider* of an electronic communication
21  service; and (2) the Archive is a library which, pursuant to 18 U.S.C. § 2709(f), is not a provider of
22  electronic communication services. Second, the provision governing the gag order in the
23  November 2007 NSL, 18 U.S.C. § 2709(c), is unconstitutional on its face. Since that provision is
24  not severable from the remainder of the statute, the entire NSL statute is unconstitutional, as one
25  court has already concluded. *See Doe v. Gonzales*, 500 F. Supp. 2d 379 (S.D.N.Y. 2007), *appeal*
26  *pending*. Because the November 2007 NSL was issued under a facially unconstitutional statute, it
27  is unlawful.
28

1

**STATEMENT OF FACTS**

2        **A.    The Internet Archive**

3            The Internet Archive is a digital library established in San Francisco, California in 1996.

4    Declaration of Brewster Kahle ("Kahle Decl.") ¶ 4; Internet Archive, About IA,

5    http://www.archive.org/about/about.php (last visited Dec. 13, 2007), attached to Kahle Decl. as Ex.

6    A. Its overarching mission is to help provide universal access to all knowledge. *Id.* ¶ 5.   To fulfill

7    that mission, the Archive works with national libraries, museums, universities, and the general

8    public to collect and offer free access to a wide variety of materials in digital format. *Id.* ¶ 6.

9    Some of its partners include the Library of Congress, the National Archives, and the British

10    Library. *Id.* ¶ 9.   The State of California has formally recognized the Archive as a library for the

11    purposes of the 1996 Library Services and Technology Act, 20 U.S.C. § 9122(1)(E). *Id.* ¶ 10 and

12    Ex. B. The Archive has been a member of the American Library Association since 2000. *Id.* ¶ 10.

13            One of the unique features of the Archive is the "Wayback Machine," which allows people

14    to visit archived versions of websites.   Visitors to the Wayback Machine can type in a URL, select

15    a date, and then begin surfing on an archived version of the Web. Kahle Decl. ¶ 11. The Archive

16    has created and maintained the Wayback Machine by collecting snapshots of billions of public web

17    pages, except those that have opted not to be archived, every two months for the last ten years. *Id.*

18            In addition to preserving an archival copy of the Web, the Archive is dedicated to

19    preserving digital copies of other sources of knowledge and culture.   The Archive has digitized

20    archival and education movies since 1999. Kahle Decl. ¶ 8.   It also has been involved in several

21    book digitization projects in collaboration with other institutions.  *Id.* ¶ 9.  In 2005, the Archive

22    formed the Open Content Alliance to build a joint collection of digitized public domain books. *Id.*

23    The Archive's book collection currently contains over 200,000 volumes from over 70 contributing

24    libraries. *Id.* In fact, the Archive's holdings contain more material than 95% of the world's

25    libraries. *Id.* All of these materials are available to patrons through the Archive's website. To

26    ensure continued access to this material, the Archive provides storage and preservation services for

27    its extensive digital collections. *Id.* ¶ 6; *Id.* Ex. A.

28

-2-

1    The Archive also accepts donated material that belongs in a library from individual patrons,

2    including audio and video recordings. Kahle Decl. ¶ 6. Thus, members of the public directly

3    contribute resources to the Archive's digital collection. Kahle Decl. ¶ 12. To ensure continued

4    access to this material, as with other portions of its collection, the Archive provides permanent,

5    archival storage and preservation services for these recordings and other materials donated by the

6    public. *Id.* ███████████████████████████████

7    As a library, the Archive actively works to serve its patrons as a resource for exploration,

8    research, and learning. Kahle Decl. ¶ 13. Providing a safe environment for a patron's activities

9    has long been an important function of libraries with physical materials. The Archive seeks to

10   continue this practice for those patrons accessing its website. *Id.* An individual wishing to view

11   digital materials on the Archive's website may do so as an "anonymous user"—that is to say,

12   without logging in to the website. *Id.* However, individuals seeking to upload materials, post

13   reviews, or communicate on message boards must first register with the Archive, which includes

14   agreeing to the Archive's "Terms of Use," providing a "valid" (although unverified) e-mail

15   address, creating a password, and supplying a screen name. *Id.* They must then log in to their

16   accounts. *Id.* While the Archive intentionally limits the information that it collects and retains

17   from users, from time to time it may possess some information about its patrons. *Id.* ¶ 14. Such

18   records may include the date the patron's account was opened, the screen names associated with the

19   patron's account, an unconfirmed e-mail address associated with the patron, and messages of those

20   who communicate with the Archive via e-mail. *Id.*

21   **B.    The November 2007 National Security Letter**

22   Many U.S. Attorneys and other law enforcement officials find the Archive a valuable

23   resource, and the Archive has regularly received requests for information about its collections,

24   most frequently for information stored in the Wayback Machine. Kahle Decl. ¶ 15. The Archive

25   regularly interacts with the federal government, including the Department of Justice, the FBI, and

26   the Central Intelligence Agency and has complied with lawful subpoenas requesting information.

27   *Id.*

28

-3-

1        In June 2007, Special Agent Scott Rakowitz and Supervisory Special Agent Chuck

2    Esposito of the San Francisco office of the FBI met with attorneys at the Electronic Frontier

3    Foundation ("EFF"), who provide legal representation to the Archive for various purposes.

4    Declaration of Kurt Opsahl ("Opsahl Decl.") ¶ 4. At that meeting, EFF agreed that it would accept

5    service of any future legal process from the FBI on behalf of the Archive. *Id.*

6        On Monday, November 26, 2007, Supervising Special Agent ▮▮▮▮▮ left a voicemail

7    message for Kurt Opsahl, Senior Staff Attorney at EFF. Opsahl Decl. ¶ 5. Similar messages were

8    left with Senior Staff Attorney Lee Tien and Staff Attorney Kevin Bankston. *Id.* The messages

9    informed them that an FBI agent would be coming to EFF's office that day. *Id.* Later that

10   morning, Special Agent ▮▮▮▮▮▮▮▮▮ arrived at EFF's office, met with Bankston, and served an

11   NSL addressed to the Archive, dated November 19, 2007 ("November 2007 NSL"). *Id.* ¶ 6 and

12   Ex. A to Opsahl Decl. The November 2007 NSL was signed by defendant Arthur M. Cummings,

13   II, Deputy Assistant Director of the Counterterrorism Division of the FBI. Opsahl Decl., Ex. A.

14       The November 2007 NSL directs the Archive "to provide the [FBI] the subscriber's name,

15   address, length of service, and electronic communication transactional records" pertaining to a

16   particular ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* It covers the period ▮▮▮▮▮▮▮▮

17   ▮▮▮▮▮ *Id.* Parroting the language of the NSL statute's non-disclosure certification

18   provision, 18 U.S.C. §2709(c), the November 2007 NSL includes the following certification:

19           disclosure of the fact that the FBI has sought or obtained access to the information
             sought by this letter may endanger the national security of the United States,

20           interfere with a criminal, counterterrorism, or counterintelligence investigation,
             interfere with diplomatic relations, or endanger the life or physical safety of a

21           person.

22   *Id.* The certification does not specify which of these harms may result from disclosure. *Id.* The

23   November 2007 NSL further advises the Archive that the NSL statute "prohibits you, or any

24   officer, employee, or agent of yours, from disclosing this letter, other than to those to whom

25   disclosure is necessary to comply with the letter or to an attorney to obtain legal advice or legal

26   assistance with respect to this letter." *Id.*

27

28

1    Appended to the November 2007 NSL is a page titled "ATTACHMENT" that states, "In

2  preparing your response to this National Security Letter, you should determine whether your

3  company maintains the following types of information which may be considered by you to be an

4  electronic communications transactional record in accordance with Title 18 United States Code

5  Section 2709." Opsahl Decl., Ex. A. The page lists, among other things, █████████████

6  ████████████████████████████████████████████████████████████

7  ████████████████████████ and "[a]ny other information which you consider to be an

8  electronic communication transactional record." *Id.* The November 2007 NSL requires that the

9  Archive provide the requested information "personally to a representative of the FBI ██████

10  ████ or through use of delivery service or through secure fax" by December 14, 2007 (14

11  business days from receipt of the letter). *Id.*

12    On Tuesday, November 27, 2007, Opsahl and EFF Staff Attorney Marcia Hofmann brought

13  the November 2007 NSL to the Archive and showed it to Brewster Kahle, who is the Chair of the

14  Archive's Board of Directors as well as one of its Digital Librarians. Kahle Decl. ¶ 18; Opsahl

15  Decl. ¶ 8.

16    On Wednesday, November 28, 2007, Special Agent ████████ left a message for Bankston

17  inquiring about the status of the Archive's response. Opsahl Decl. ¶ 11. Later that day, Opsahl

18  spoke with Special Agent ██████ on the telephone and informed him that the Archive was

19  reviewing and considering the letter and notified him, pursuant to section 2709(c)(4), that the

20  Archive would be bringing in additional counsel. *Id.* ¶ 12.

21    The NSL statute and the November 2007 NSL have prevented the Archive from disclosing

22  information about the November 2007 NSL and this lawsuit to the Archive's board of directors, to

23  its staff, to its patrons, to other libraries, to the press, to members of the public, and to members of

24  Congress. They likewise have prevented the Archive from making it known that it is speaking

25  from experience in publicly advocating for legislative change with respect to the NSL demand and

26  gag power. Kahle Decl. ¶ 21.

27

28

1   **ARGUMENT**

2   **I.     THE NOVEMBER 2007 NSL IS NOT AUTHORIZED BY 18 U.S.C. § 2709**

3          The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2712, which was enacted as

4   Title II of the Electronic Communications Privacy Act ("ECPA"), regulates the government's

5   access to stored information maintained by network service providers.  Section 2709, which is part

6   of the SCA, governs the FBI's issuance of an NSL.  Section 2709(a) provides in pertinent part:

7          **Duty to provide.**—A wire or electronic communication service provider shall
8          comply with a request for subscriber information and toll billing records
           information, or electronic communication transactional records in its custody or
9          possession made by the Director of the Federal Bureau of Investigation under
           subsection (b) of this section.

10

11          By its terms, section 2709 permits the issuance of an NSL only to a wire or electronic

12   communication service ("ECS") provider.[1]  The Internet Archive, however, is not an ECS provider

13   and hence may not be required to comply with the November 2007 NSL.  First, in configuring its

14   site so that patrons can contribute materials by uploading them to the site, the Archive is only a

15   user, not a provider of an ECS.  Second, the activity at issue under the November 2007 NSL –

16   permitting patrons ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ part of the Archive ▮▮▮▮▮▮▮▮

17   ▮▮▮▮▮▮ – is not the provision of an electronic communication service; rather, it is providing

18   storage and preservation services, more akin to providing remote computing storage.  The NSL

19   must therefore be set aside.

20          **A.     The Archive Is A User, Not A Provider of An Electronic Communication**
                      **Service**
21

22          The SCA defines "electronic communication service" as "any service which provides to

23   users thereof the ability to send or receive wire or electronic communications."  18 U.S.C. §

24   2510(15).  The issue here, however, is not whether electronic communications are being sent and

25

26   [1] The reference to a "wire" communication service in section 2709 is redundant, since the
     definition of an "electronic" communication service encompasses "any service which provides to
27   users thereof the ability to send or receive *wire* or electronic communications."  18 U.S.C. §
     2510(15) (emphasis added) (incorporated by reference into the SCA at 18 U.S.C. § 2711).

28

-6-

1    received between the Archive and its patrons. They plainly are. The issue is whether the Archive

2    actually *provides* the service that allows the communications to be sent and received or whether, as

3    the case law discussed below makes clear, the Archive, like its patrons, is simply a user of that

4    service.

5        Allowing those who visit a website to provide information to it does not make that website

6    a *provider* of an ECS. This is true whether a visitor is providing information to the site in order to

7    complete a purchase, *see Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263 (N.D. Cal. 2001), or

8    is providing information in connection with downloading streaming "visual programming," *see In*

9    *re Broadcast.com, Inc.*, 2001 WL 36050382 (E.D. Tex. 2001), or is making online airline

10   reservations, *see In re JetBlue Airways Corp. Privacy Litigation*, 379 F. Supp. 2d 299 (E.D.N.Y.

11   2005), or is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the Internet Archive. To the contrary, both the

12   website in question and the person or entity communicating with the site are *users* of an ECS.

13   Here, as in the cases cited above, the entity that enables the communications to take place is the

14   Internet access provider used by the Archive or the visitor to the Archive website. Those access

15   providers are the ECS providers. *See In re Doubleclick Privacy Litigation*, 154 F. Supp. 2d 497,

16   508 (S.D.N.Y. 2001) ("the 'service which provides to users thereof the ability to send or receive

17   wire or electronic communications' is 'Internet access.'"); *In re Broadcast.com, Inc.*, 2001 WL

18   36050382 at *2 (same).

19       In a number of cases, website patrons have alleged that the defendant was an ECS provider

20   that had violated the SCA by unlawfully disclosing personal information provided in connection

21   with obtaining the products or services of the website. In each case, the court rejected the

22   plaintiff's claim because the website in question did not provide an electronic communication

23   service and hence was not subject to the SCA's proscription. *In re JetBlue Corp. Airways Privacy*

24   *Litigation*, 379 F. Supp. 2d 299; *Dyer v. Northwest Airlines Corporations*, 334 F. Supp. 2d 1196,

25   1199 (D.N.D. 2004) ("businesses offering their traditional products and services online through a

26   website are not providing an 'electronic communication service'"); *Crowley*, 166 F. Supp. 2d at

27   1270 (Amazon.com is not an ECS provider, it is an ECS user); *In re Broadcast.com*, Inc., 2001 WL

28   36050382 at *2, 3 ("Broadcast.com operates a website and, in doing so, does not provide Internet

-7-

1   access to the public. It uses it."); *see also, In re Doubleclick Privacy Litigation,* 154 F. Supp. 2d at

2   508-09 (websites are users of an ECS under ECPA for purposes of determining applicability of

3   exception to prohibition against obtaining access to an electronic communication). As the court in

4   *In re JetBlue Corp. Airways Privacy Litigation* explained:

5           Although JetBlue operates a website that receives and transmits data to and from
            its customers, it is undisputed that it is not the provider of the electronic
6           communication service that allows such data to be transmitted over the Internet.
            Rather, JetBlue is more appropriately characterized as a provider of air travel
7           services and a consumer of electronic communication services. The website that
            it operates, like a telephone, enables the company to communicate with its
8           customers in the regular course of business. Mere operation of the website,
            however, does not transform JetBlue into a provider of internet access, just as the
9           use of a telephone to accept telephone reservations does not transform the
            company into a provider of telephone service. Thus, a company such as JetBlue
10          does not become an "electronic communication service" provider simply because
            it maintains a website that allows for the transmission of electronic
11          communications between itself and its customers."
12

13  *In re JetBlue Corp. Privacy Litigation,* 379F. Supp. 2d at 307 (fn. omitted). [2]

14          The Archive is no more an ECS provider than were the websites in the cases cited above.

15  Like those websites, the Archive is a user of the Internet so that it may, for example, ████ .

16  ████████████████████████████████████████ the Archive's collection. Its

17  purpose is not to provide basic connectivity, *i.e.,* access to an electronic communications service

18  to third parties. Its purpose is to act as a repository of information and knowledge, stored in

19  digital form, so that knowledge and information may be preserved and made available to those

20  seeking it, now and for generations to come. Because the Archive is not an ECS provider, the

21  Archive falls outside the parameters of section 2709(a) and hence the NSL at issue here must be

22  set aside as unlawful.

23  ─────────────────────
    [2] The Archive's public Internet website stands in stark contrast to the elaborate, internal American
24  Airlines computerized customer reservation system, known as SABRE, that was at issue in *United
    States v. Mullins,* 992 F.2d 1472 (9th Cir. 1993). In *Mullins,* the defendant travel agents used the
25  system, access to which they leased from American, to defraud the airline by stealing frequent flyer
    miles. *Id.* at 1474-75. In upholding the constitutionality of the manner in which evidence against
26  the defendants was obtained from SABRE, the Ninth Circuit assumed, without analysis, that
    American was a provider of a wire or electronic communications service with respect to the
27  system. *Id.* at 1478. The court's conclusion, with respect to a private, internal system, access to
    which was leased to others, in no way contradicts the conclusions of the decisions cited in the text.
28

1    B.    **In Allowing Patrons** ███████████████████████████ **the Archive Is**
2          **Providing Storage and Preservation Services and Therefore Is Not an ECS**
           **Provider**

3          The SCA regulates the activities of providers of an "electronic communication service" and

4    those of a "remote computing service" ("RCS").[3]  Section 2709 applies only to ECS providers,

5    however, not to RCS providers, nor to entities that are neither an ECS nor an RCS provider.  In

6    determining whether an entity is an ECS provider, an RCS provider, or neither, the court must

7    examine the nature of the activity in question in order to ascertain whether the statute applies.  That

8    is because an entity may be an electronic communication service provider with respect to some

9    activities but not with respect to others.  As the Department of Justice itself recognizes:

10         Whether an entity is a provider of an "electronic communication service," or a
           provider of "remote computing service," or neither depends on the nature of the
11         particular communication sought [by the government].  For example, a single
           provider can simultaneously provide "electronic communications service" with
12         respect to one communication and "remote computing service" with respect to
           another communication.
13

14   U.S. Dep't of Justice, Criminal Division, Computer Crime and Intellectual Property Section,

15   *Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations*

16   88 (July 2002); *accord, Quon v. Arch Wireless Operating Company, Inc.*, 445 F. Supp. 2d 1116,

17   1136 (C.D. Cal. 2006) ("Congress recognized that service providers can offer a wide variety of

18   different services, each one being characterized differently under the statute." (citing S. Rpt. No.

19   99-541, at 16 (1986)).  As Professor Orin Kerr explains:

20         The distinction between providers of ECS and RCS is made somewhat confusing
           by the fact that most network service providers are multifunctional. . . . The
21         classifications of ECS and RCS are context sensitive: the key is the provider's role
           with respect to a particular copy of a particular communication, rather than the
22         provider's status in the abstract.

23   Orin S. Kerr, *A User's Guide to the Stored Communications Act—and a Legislator's Guide to*

24   *Amending It*, 72 GEO. WASH. L. REV. 1208, 1215 (2004).

25

26   _____
     [3]  As noted above, the Act defines "electronic communication service" as "any service which
     provides to users thereof the ability to send or receive wire or electronic communications." 18
27   U.S.C. § 2510(15).  It defines a "remote computing service" as the "provision to the public of
     computer storage or processing services by means of an electronic communications system." 18
28   U.S.C. § 2711(2).

1    The characteristics the courts rely on to distinguish an RCS from an ECS also demonstrate

2    that the storage and preservation services that the Archive provides to those who ▮▮▮▮▮▮▮▮▮▮

3    ▮▮▮▮▮▮▮▮▮▮        take the Archive outside the definition of an ECS. The discussion in *Quon v.*

4    *Arch Wireless Operating Co., Inc.*, 445 F. Supp. 2d 1116, is particularly useful. The court there

5    delineates three essential characteristics that distinguish storage by an ECS from storage by an

6    RCS:

7        First, "the centrality a computer plays in facilitating the communication is key to Congress'

8    definition of a remote computing service. . . . [A]t a minimum, a computer must play a central role

9    in facilitating the storage of the communication." *Id.* at 1132-33 (emphasis added). Second, the

10   fact that the material is being stored is a critical factor. *Id.* at 1134. Finally, the length and purpose

11   of the storage must be examined. When an entity provides long term storage that "is not incidental

12   to the transmission of the communication itself, and is not meant for backup protection but . . . as

13   the single place where text messages, after they have been read, are archived for a permanent

14   record-keeping mechanism," it is acting as an RCS. *Id.* at 1136; *accord United States v. Jackson*,

15   2007 WL 3230140 at *3 (D.D.C. 2007) (quoting *Quon* with approval).

16       Like the text message storage service at issue in *Quon* and *Jackson*, the service the Archive

17   provides in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the public takes it outside the definition of

18   an ECS. As in *Jackson* and *Quon*, the Archive provides permanent, archival storage as part of

19   ▮▮▮▮▮▮▮▮▮ the collection. Kahle Decl. ¶ 12. This differentiates the Archive from an ECS

20   whose electronic storage of communications is either temporary, intermediate storage in

21   connection with the transmission of a communication or is for purposes of backup protection for

22   the communication. *See Quon*, 445 F. Supp. 2d at 1136. The Archive is intended as the final

23   point where the material is stored—that is, the material becomes part of the Archive's permanent

24   collection.[4]

25   ─────────────────────────────────────────────────────────
     [4]  Although the Archive provides many other services to the public, including the ability to
26   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮and▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
     ▮▮▮▮▮▮▮▮▮ that does not change the fact that the service in question
27   here—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is one of storage, not the provision of
     an electronic communication service. Whether the Archive might be considered an ECS provider
28   with respect to those services is a question better left for another day. *See United States v. Steiger*,
     318 F.3d 1039, 1049 (11th Cir. 2003) (equating, in dictum, an electronic bulletin board system with

1      The FBI cannot obtain from the Archive the particular records it seeks using an NSL issued

2  under 18 U.S.C. 2709(a) because the Archive is not an electronic communication service provider

3  for purposes of maintaining the records sought.

4  **II.    THE ARCHIVE IS NOT SUBJECT TO THE NOVEMBER 2007 NSL BECAUSE IT**

5        **IS A LIBRARY PURSUANT TO 18 U.S.C. § 2709(f)**

6      18 U.S.C. § 2709 contains an additional protection to ensure that libraries cannot be treated

7  as electronic communication service providers for providing essential library services to the public.

8  Specifically, the statute provides:

9      A library (as that term is defined in section 213(1) of the Library Services and
10      Technology Act (20 U.S.C. § 9122(1)), the services of which include access to the
       Internet, books, journals, magazines, newspapers, or other similar forms of
11     communication in print or digitally by patrons for their use, review, examination,
       or circulation, is not a wire or electronic communication service provider for
12     purposes of this section, unless the library is providing the services defined in
       section 2510(15) ("electronic communication service") of this title.
13

14  18 U.S.C. § 2709(f).

15      In turn, the 1996 Library Services and Technology Act defines a "library" as including,

16  *inter alia,* "a private library or other special library, but only if the State in which such private or

17  special library is located determines that the library should be considered a library for purposes of

18  this subchapter." 20 U.S.C. § 9122(1)(E). The Archive has been formally recognized as a library

19  by the State of California for purposes of the 1996 Library Services and Technology Act, and thus

20  satisfies this definition. Kahle Decl., Ex. B. The Archive is therefore the type of library to which

21  18 U.S.C. § 2709(f) applies, and cannot be considered a wire or electronic communication service

22  provider under 18 U.S.C. § 2709(f) unless it provides an "electronic communication service" under

23  18 U.S.C. § 2510(15).

24

25  a telephone company or an ISP); *Konop v. Hawaiian Airlines*, Inc., 302 F.3d 868, 879-80 (9th Cir.
    2002) (accepting the parties' assumption that host of Web-based message board was an electronic
26  communication service provider). █████████████████████

27  ████*See Quon*, 445 F. Supp. 2d at 1136-37 (A single entity can offer differing services and
    whether it is treated as an ECS or an RCS with respect to that service depends on the nature of the
28  service in question).

1      As explained above, the Archive does not provide an "electronic communication service"

2   with respect to the ███████████ It provides access to those ███████████ "patrons for their

3   use review, examination or circulation," 18 U.S.C. § 2709(f). Thus, 18 U.S.C. § 2709(f) provides

4   an additional reason why the Court should not classify the Archive as a provider of electronic

5   communication services subject to demands for records under 18 U.S.C. § 2709(a), and the Court

6   must therefore set aside the November 2007 NSL.

7   **III.    THE NOVEMBER 2007 NSL IS UNCONSTITUTIONAL BECAUSE IT VIOLATES**
8   **        THE FIRST AMENDMENT**

9      The November 2007 NSL must also be set aside because the statutory authority under

10  which it was issued is unconstitutional on its face. The gag order provision in section 2709(c)

11  violates the First Amendment and cannot be severed from the remainder of the statute. That

12  renders 18 U.S.C. § 2709 unenforceable in its entirety. Notably, the one court that has already

13  considered the constitutionality of the NSL statute concluded that the statute's gag provisions

14  violate the First Amendment and that because those gag provisions are not severable, the entire

15  statute is unconstitutional. *Doe v. Gonzales*, 500 F. Supp. 2d 379 (S.D.N.Y. 2007), *appeal*

16  *pending*. The *Doe* court enjoined the FBI from issuing NSLs under 18 U.S.C. § 2709, but that

17  ruling is stayed pending appeal. That the November 2007 NSL was issued under a facially

18  unconstitutional statute provides yet another reason that the NSL should be set aside.

19     The Court need not, however, decide the question of the facial constitutionality of the NSL

20  statute's gag provisions in the context of this petition. That issue will be briefed in connection with

21  the motion for summary judgment that plaintiffs will be filing in this case, challenging the facial

22  and as-applied constitutionality of 18 U.S.C. § 2709 and of § 3511, which sets forth the procedures

23  and standards governing a challenge to a section 2709(c) a gag order. Accordingly, petitioner's

24  constitutional argument can, most appropriately, be fully explicated in the context of that action.

25  //

26  //

27  //

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION
TO SET ASIDE NATIONAL SECURITY LETTER

1

**CONCLUSION**

2          For the foregoing reasons, the Archive requests that this Court issue an order setting aside

3    the November 2007 NSL.

4

5                                          Respectfully submitted,

6                                          MELISSA GOODMAN
                                           JAMBEL JAFFER
7                                          L. DANIELLE TULLY
                                           American Civil Liberties Union Foundation
8                                          National Security Project

9                                          ANN BRICK
                                           American Civil Liberties Union
10                                         Foundation of Northern California, Inc.

11                                         By: _____
                                                   ANN BRICK
12                                             Counsel for Petitioner

13                                         CINDY COHN
                                           KURT OPSAHL
14                                         MARCIA HOFMANN
                                           Electronic Frontier Foundation

15                                         By: _____
                                                   MARCIA HOFMANN
16    DATED: December 14, 2007                 Counsel for Petitioner

17

18

19

20

21

22

23

24

25

26

27

28