GREGORY KATSAS
Acting Assistant Attorney General
JOSEPH P. RUSSONIELLO C.S.B.N. 44332
United States Attorney
SANDRA SCHRAIBMAN
Assistant Branch Director
STEVEN Y. BRESSLER D.C. Bar No. 482492
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch

P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 514-4781
Facsimile: (202) 318-7609
Email: Steven.Bressler@usdoj.gov

Attorneys for Defendants Michael B. Mukasey, *et al.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNET ARCHIVE and AMERICAN CIVIL LIBERTIES UNION, *et al.*,<br><br>              Plaintiffs,<br><br>    v.<br><br>MICHAEL B. MUKASEY, Attorney General of the United States, *et al.*,<br><br>              Defendants.<br>_____ | No. C 4:07-06346 CW<br><br>**STIPULATION OF DISMISSAL WITH PREJUDICE AND STIPULATED REQUEST THAT THE COURT RETAIN JURISDICTION TO ENFORCE THE TERMS OF THE PARTIES' SETTLEMENT AGREEMENT; [PROPOSED] ORDER** |

    COME NOW THE PARTIES, by and through their undersigned counsel, and stipulate to the dismissal, with prejudice, of this action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).

    The parties also respectfully request by stipulation that this Court retain jurisdiction over this matter solely to enforce, and pursuant to, the terms of the parties' April 21, 2008, Settlement Agreement, which is filed as an exhibit herewith. As provided in Paragraph 5 of that Agreement,

1  the parties now also state:  Pursuant to the Agreement of the parties, as indicated by their

2  signatures through counsel below, this action is dismissed with prejudice, provided, however,

3  that the Court shall retain exclusive jurisdiction over this action for purposes of resolving any

4  disputes that may arise in the future regarding the Settlement Agreement between the parties, its

5  terms or the enforcement thereof.

6  Dated May 8, 2008                    Respectfully Submitted,

7                                       GREGORY KATSAS
                                        Acting Assistant Attorney General
8
                                        JOSEPH P. RUSSONIELLO C.S.B.N. 44332
9                                       United States Attorney

10                                      SANDRA M. SCHRAIBMAN
                                        Assistant Branch Director
11

12                                      ___/s/ Steven Y. Bressler___
                                        STEVEN Y. BRESSLER D.C. Bar #482492
13                                      Trial Attorney
                                        U.S. Department of Justice
14                                      Civil Division, Federal Programs Branch
                                        P.O. Box 883
15                                      Washington, D.C. 20044
                                        (202) 514-4781 (telephone)
16                                      (202) 318-7609 (fax)

17                                      Attorneys for Defendants

18                                      ___/s/ Melissa Goodman___ (by permission)
                                        MELISSA GOODMAN N.Y. SB# 422433
19                                      JAMEEL JAFFER N.Y. SB# 3064201
                                        L. DANIELLE TULLY N.Y. SB# 4334512
20                                      American Civil Liberties Union Foundation
                                        125 Broad St., 18th Floor
21                                      New York, NY 10004-2400
                                        (212) 549-2500 (telephone)
22                                      (212) 549-2680 (fax)
                                        mgoodman@aclu.org
23
                                        ANN BRICK C.S.B.N. 65296
24                                      American Civil Liberties Union Foundation
                                            of Northern California, Inc.
25                                      39 Drumm St.
                                        San Francisco, CA 94111
26                                      (415) 621-2493 (telephone)
                                        (415) 255-8437 (fax)
27

28  *Case No. C 3:07-06346 CW*
    *Stipulation of Dismissal and Stipulated Request*

CINDY COHN C.S.B.N. 145997
KURT OPSAHL C.S.B.N. 191303
MARCIA HOFMANN C.S.B.N. 250087
Electronic Frontier Foundation
454 Shotwell St.
San Francisco, CA 94110
(415) 436-9333 (telephone)
(415) 436 9993 (fax)

*Attorneys for Plaintiffs*

[PROPOSED] ORDER

PURSUANT TO STIPULATION, IT IS SO ORDERED

Date: ___5/9/08___

_____
Hon. CLAUDIA WILKEN
United States District Judge

DECLARATION PURSUANT TO GENERAL ORDER 45, § X.B

I, Steven Y. Bressler, hereby declare pursuant to General Order 45, § X.B, that I have obtained the concurrence in the filing of this document from the other signatory listed above.

I declare under penalty of perjury that the foregoing declaration is true and correct.

Executed this 8th day of May, 2008, at Washington, D.C.

___/s/ Steven Y. Bressler___
Steven Y. Bressler

*Case No. C 3:07-06346 CW*
*Stipulation of Dismissal and Stipulated Request*

1    JEFFREY S. BUCHOLTZ
     Acting Assistant Attorney General
2    JOSEPH P. RUSSONIELLO C.S.B.N. 44332
     United States Attorney
3    SANDRA SCHRAIBMAN
     Assistant Branch Director
4    STEVEN Y. BRESSLER D.C. Bar No. 482492
     Trial Attorney
5    United States Department of Justice
     Civil Division, Federal Programs Branch
6
       P.O. Box 883
7      Washington, D.C. 20044
       Telephone: (202) 514-4781
8      Facsimile: (202) 318-7609
       Email: Steven.Bressler@usdoj.gov
9
     Attorneys for Defendants Michael B. Mukasey, Attorney General of the United States, Robert S.
10   Mueller III, Director of the Federal Bureau of Investigation, and Arthur M. Cummings II, Deputy
     Assistant Director of the Counterterrorism Division of the Federal Bureau of Investigation
11

12                        UNITED STATES DISTRICT COURT

13                      NORTHERN DISTRICT OF CALIFORNIA

14

15   INTERNET ARCHIVE and AMERICAN      )    No. C 4:07-06346 CW
     CIVIL LIBERTIES UNION, et al.,     )
16                                      )    **SETTLEMENT AGREEMENT**
                Plaintiffs,             )
17                                      )    **DOCUMENT FILED UNDER SEAL**
          v.                            )    **PURSUANT TO COURT ORDER DATED**
18                                      )    **DECEMBER 14, 2007**
     MICHAEL B. MUKASEY, Attorney       )
19   General of the United States, et al.,)
                                        )
20              Defendants.             )
21   _____)

22        This Settlement Agreement (hereinafter "the Agreement") is made between plaintiffs

23   Internet Archive, American Civil Liberties Union, American Civil Liberties Union Foundation,

24   American Civil Liberties Union of Northern California, Inc., American Civil Liberties Union

25   Foundation of Northern California, Inc., and Electronic Frontier Foundation (hereinafter

26   "plaintiffs") and defendants Michael B. Mukasey, Attorney General of the United States, Robert

27   S. Mueller III, Director of the Federal Bureau of Investigation (hereinafter "FBI"), and Arthur M.

28   Cummings II, Deputy Assistant Director of the Counterterrorism Division of the FBI (hereinafter

1    "defendants"), by and through their undersigned counsel.

2     WHEREAS plaintiffs and defendants desire to settle and compromise certain claims

3    between them, avoid further proceedings and expense, and resolve this matter under the terms set

4    forth below.

5     WHEREAS the plaintiffs have brought suit in the Northern District of California (No. C

6    4:07-06346 CW) against defendants.

7    **AGREEMENTS**

8     The parties, by and through their undersigned counsel, hereby agree to the following:

9     1. Within three (3) calendar days of the execution of this Agreement, a duly

10     authorized employee of the FBI shall contact Internet Archive in an appropriate

11     writing to withdraw the National Security Letter served on Internet Archive that is

12     the subject of plaintiffs' suit in the Northern District of California, No. C 4:07-

13     06346 CW, against defendants (hereinafter "NSL"). The letter shall state that the

14     NSL is withdrawn; that the FBI will not seek to enforce the NSL, including its

15     non-disclosure requirement; and that the remaining nondisclosure obligations are

16     governed exclusively by the terms of this Agreement.

17     2. Notwithstanding withdrawal of the NSL, plaintiffs, their employees and

18     representatives shall keep confidential and not publicly disclose the content of

19     those portions of the NSL and the Attachment that was sent to Internet Archive

20     with the NSL that are redacted in the copy of the NSL and Attachment that is

21     Exhibit A hereto. The individual employees of plaintiffs who have seen the

22     content of those redacted portions of the NSL also shall not disclose them to any

23     other employees of plaintiffs, except to (a) counsel of record in Northern District

24     of California Case No. C 4:07-06346 CW and other attorneys, secretaries,

25     assistants, and employees of plaintiffs who work with counsel of record to the

26     extent reasonably necessary to render professional services in that case or with

27     respect to this Agreement, or (b) those to whom such disclosure is necessary to

28     comply with the terms of this Agreement or an attorney to obtain legal advice or

1  legal assistance with respect to this Agreement.  Such a disclosure may be made to
2  someone not a party to this Agreement only after that individual is informed of,
3  and agrees to, the nondisclosure obligations imposed by this Agreement by
4  endorsing a complete copy of this Agreement with his or her signature and the
5  statement "I agree to be bound by the nondisclosure obligations imposed by this
6  Settlement Agreement and consent to the personal jurisdiction of the U.S. District
7  Court for the Northern District of California for purposes of enforcing the
8  nondisclosure terms of the Agreement."  Counsel for the respective parties shall
9  retain copies of the Agreement so endorsed until such time as the FBI has
10  permitted to expire the certification described in Paragraph 13 or the Court has set
11  the certification aside as provided under Paragraphs 13 and/or 14.

3.  Within seven calendar days of plaintiffs' receipt of the writing described in
paragraph 1 signifying withdrawal of the NSL, the parties shall file a joint
administrative motion to unseal Northern District of California Case No. C 4:07-
06346 CW, except that the following, previously-filed documents and attachments
thereto shall remain sealed: the Complaint for Declaratory and Injunctive Relief;
Memorandum of Points and Authorities in Support of Petition of Plaintiff Internet
Archive to Set Aside National Security Letter; Declaration of Brewster Kahle; and
Declaration of Kurt Opsahl.  Upon entry of an order unsealing the case, within
three calendar days the plaintiffs may file the public, redacted versions of those
documents that are Exhibit B hereto.

4.  The parties, their employees and representatives shall keep confidential and not
publicly disclose the content of those portions of the parties' filings in Northern
District of California Case No. C 4:07-06346 CW that remain redacted in Exhibit
B hereto. The individual employees of plaintiffs who have seen the content of
those redacted portions of the filings also shall not disclose them to any other
employees of plaintiffs, except to (a) counsel of record in Northern District of
California Case No. C 4:07-06346 CW and other attorneys, secretaries, assistants,

1    and employees of plaintiffs who work with counsel of record to the extent

2    reasonably necessary to render professional services in that case or with respect to

3    this Agreement, or (b) those to whom such disclosure is necessary to comply with

4    the terms of this Agreement or an attorney to obtain legal advice or legal

5    assistance with respect to this Agreement.  Such a disclosure may be made to

6    someone not a party to this Agreement only after that individual is informed of,

7    and agrees to, the nondisclosure obligations imposed by this Agreement by

8    endorsing a complete copy of this Agreement with his or her signature and the

9    statement "I agree to be bound by the nondisclosure obligations imposed by this

10   Settlement Agreement and consent to the personal jurisdiction of the U.S. District

11   Court for the Northern District of California for purposes of enforcing the

12   nondisclosure terms of the Agreement."  Counsel for the respective parties shall

13   retain copies of the Agreement so endorsed until such time as the FBI has

14   permitted to expire the certification described in Paragraph 13 or the Court has set

15   the certification aside as provided under Paragraphs 13 and/or 14.

16   5.    Within three days of entry of the Court's order granting the parties' administrative

17        motion described in paragraph 3, assuming the Court grants that motion, the

18        parties shall stipulate and consent to the entry of an order dismissing, with

19        prejudice, Northern District of California Case No. C 4:07-06346 CW, that also

20        recites as follows: "Pursuant to the Agreement of the parties, as indicated by their

21        signatures through counsel below, this action is dismissed with prejudice,

22        provided, however, that the Court shall retain exclusive jurisdiction over this

23        action for purposes of resolving any disputes that may arise in the future regarding

24        the Settlement Agreement between the parties, its terms or the enforcement

25        thereof."

26   6.    Nothing in this Agreement prohibits plaintiffs from publicly discussing in good

27        faith the services Internet Archive provides, the kinds of material that can

28        generally be uploaded to Internet Archive, and the kinds of public and non-public

1  information it generally retains about those who access or upload materials to

2  Internet Archive. Nothing in this Agreement prohibits plaintiffs from publicly

3  disclosing that the NSL sought information about a user of the Archive.

4  7.  Nothing in this Agreement prohibits plaintiffs from (1) acknowledging that they

5  have seen the redacted portions of the Attachment provided with the NSL served

6  on Internet Archive and (2) stating their view regarding whether the redacted

7  portions of that Attachment describe only non-content information.

8  8.  Plaintiffs may release and publicly discuss the contents of those portions of their

9  letter to the FBI dated December 17, 2007, that are not redacted in the copy of the

10  letter that is Exhibit C hereto. Plaintiffs shall keep confidential, and not publicly

11  discuss, the information redacted from the letter that is Exhibit C. The individual

12  employees of plaintiffs who have seen the content of those redacted portions of

13  Exhibit C also shall not disclose them to any other employees of plaintiffs, except

14  to (a) counsel of record in Northern District of California Case No. C 4:07-06346

15  CW and other attorneys, secretaries, assistants, and employees of plaintiffs who

16  work with counsel of record to the extent reasonably necessary to render

17  professional services in that case or with respect to this Agreement, or (b) those to

18  whom such disclosure is necessary to comply with the terms of this Agreement or

19  an attorney to obtain legal advice or legal assistance with respect to this

20  Agreement. Such a disclosure may be made to someone not a party to this

21  Agreement only after that individual is informed of, and agrees to, the

22  nondisclosure obligations imposed by this Agreement by endorsing a complete

23  copy of this Agreement with his or her signature and the statement "I agree to be

24  bound by the nondisclosure obligations imposed by this Settlement Agreement

25  and consent to the personal jurisdiction of the U.S. District Court for the Northern

26  District of California for purposes of enforcing the nondisclosure terms of the

27  Agreement." Counsel for the respective parties shall retain copies of the

28  Agreement so endorsed until such time as the FBI has permitted to expire the

1    certification described in Paragraph 13 or the Court has set the certification aside

2    as provided under Paragraphs 13 and/or 14.

3    9.    This Agreement does not constitute, and may not be construed as, a determination

4        or an admission of a violation of any law, rule, regulation, policy, or contract by

5        defendants, the truth of any allegation made in this matter, or the validity of any

6        claim asserted in this matter. This Agreement does not constitute, and may not be

7        construed as, a determination or an admission that defendants are liable in this

8        matter or that plaintiffs are a prevailing party.

9    10.   This Settlement Agreement constitutes the entire agreement of the parties, and no

10        prior statement, representation, agreement, or understanding, oral or written, that

11        is not contained herein (including the exhibits thereto), will have any force or

12        effect.

13    11.   The parties and their counsel shall make every reasonable effort to remedy any

14        disclosure of information redacted from the exhibits hereto (hereinafter "Protected

15        Information"). However, nothing in this Agreement requires plaintiffs to oppose a

16        motion by a non-party to unseal court records in this case.

17    12.   If any Protected Information becomes public through an official and documented

18        disclosure by the federal government or a disclosure by a non-party, plaintiffs

19        shall be free to file a motion under seal for the Court to unseal the pertinent

20        portions of the documents filed in Northern District of California Case No. C

21        4:07-06346 CW, after meeting and conferring with defendants. Defendants shall

22        be free to oppose any such motion. If such portions are unsealed through a motion

23        as described in this paragraph, plaintiffs may publicly disclose and discuss their

24        contents.

25    13.   On December 1, 2008, the nondisclosure requirement with respect to Protected

26        Information shall cease, unless the Director of the FBI, or his designee in a

27        position not lower than Deputy Assistant Director at FBI headquarters or a Special

28        Agent in Charge in a FBI field office designated by the Director, certifies to the

*Case No. C 4:07-06346 CW*
*Settlement Agreement*                                                    6

1    Court that otherwise there may result a danger to the national security of the

2    United States, interference with a criminal, counterterrorism, or

3    counterintelligence investigation, interference with diplomatic relations, or danger

4    to the life or physical safety of any person.  If the Director or his designee so

5    certifies, the nondisclosure requirements of this Agreement with respect to

6    Protected Information shall continue for an additional year.  If plaintiffs thereafter,

7    and after meeting and conferring with defendants, request an additional

8    certification each year following the prior certification, the certification described

9    in this Paragraph may be made thereafter to continue the nondisclosure

10   requirements from year to year, if necessary.  If the Director or his designee so

11   certifies, plaintiffs, after meeting and conferring with defendants, may, on or after

12   December 1, 2012, ask the Court to modify or set aside the nondisclosure

13   obligation with respect to Protected Information.  Such a review by the Court

14   under this Agreement would be conducted pursuant to the terms of 18 U.S.C.

15   § 3511(b).

16   14.   Notwithstanding paragraph 13 above, if the nondisclosure provisions of 18 U.S.C.

17        § 2709 and/or 18 U.S.C. § 3511 are found unconstitutional or enjoined on First

18        Amendment grounds by the U.S. Supreme Court or the U.S. Court of Appeals for

19        the Ninth Circuit in a final, non-appealable order, or by another court of the

20        United States in a final, non-appealable order that binds the FBI in the Northern

21        District of California, the nondisclosure requirement with respect to Protected

22        Information shall cease one year after the date of this Agreement, unless the

23        Director of the FBI, or his designee in a position not lower than Deputy Assistant

24        Director at FBI headquarters or a Special Agent in Charge in a FBI field office

25        designated by the Director, certifies to the Court that otherwise there may result a

26        danger to the national security of the United States, interference with a criminal,

27        counterterrorism, or counterintelligence investigation, interference with

28        diplomatic relations, or danger to the life or physical safety of any person, and the

1  Court determines that the non-disclosure requirement remains appropriate under
2  the appropriate standard of review.

3  15.  This Agreement may be enforced by the parties only through civil proceedings
4       before the U.S. District Court for the Northern District of California, and such
5       proceedings are the exclusive means for enforcing the Agreement.  Any violation
6       of this Agreement, including the release of Protected Information, may be
7       considered by the Court for purposes of determining whether it should impose
8       sanctions and/or for purposes of determining whether the matter should be
9       referred for appropriate disciplinary proceedings.

10 16.  This Settlement Agreement may not be modified or amended except by an
11      instrument in writing, agreed to and signed by the parties, nor shall any provision
12      be waived other than by a written waiver signed by the parties.

13 17.  Each party shall bear its own fees and costs in Northern District of California
14      Case No. C 4:07-06346 CW.

15 18.  This Agreement may be executed in counterparts, each of which shall be deemed
16      an original, and all of which together shall be deemed one and the same
17      instrument.

1  Dated April 21, 2008

2                                   JEFFREY S. BUCHOLTZ
                                    Acting Assistant Attorney General
3
                                    JOSEPH P. RUSSONIELLO C.S.B.N. 44332
4                                   United States Attorney

5                                   SANDRA M. SCHRAIBMAN
                                    Assistant Branch Director
6

7                                   STEVEN Y. BRESSLER D.C. Bar #482492
8                                   Trial Attorney
                                    U.S. Department of Justice
9                                   Civil Division, Federal Programs Branch
                                    P.O. Box 883
10                                  Washington, D.C. 20044
                                    (202) 514-4781 (telephone)
11                                  (202) 318-7609 (fax)

12                                  *Attorneys for Defendants*

13

14

15                                  MELISSA GOODMAN N.Y. SB# 422433
                                    JAMEEL JAFFER N.Y. SB# 3064201
16                                  L. DANIELLE TULLY N.Y. SB# 4334512
                                    American Civil Liberties Union Foundation
17                                  125 Broad St., 18th Floor
                                    New York, NY 10004-2400
18                                  (212) 549-2500 (telephone)
                                    (212) 549-2680 (fax)
19                                  mgoodman@aclu.org

20                                  ANN BRICK C.S.B.N. 65296
                                    American Civil Liberties Union Foundation
21                                      of Northern California, Inc.
                                    39 Drumm St.
22                                  San Francisco, CA 94111
                                    (415) 621-2493 (telephone)
23                                  (415) 255-8437 (fax)

24                                  CINDY COHN C.S.B.N. 145997
                                    KURT OPSAHL C.S.B.N. 191303
25                                  MARCIA HOFMANN C.S.B.N. 250087
                                    Electronic Frontier Foundation
26                                  454 Shotwell St.
                                    San Francisco, CA 94110
27                                  (415) 436-9333 (telephone)
                                    (415) 436 9993 (fax)
28
                                    *Attorneys for Plaintiffs*



U.S. Department of Justice

Federal Bureau of Investigation

935 Pennsylvania Ave., N.W.
Washington, D.C. 20535

November 19, 2007

Internet Archive
116 Sheridan Avenue
San Francisco, California

To whom it may concern:

Under the authority of Executive Order 12333, dated December 4, 1981, and pursuant to Title 18, United States Code (U.S.C.), Section 2709 (Section 201 of the Electronic Communications Privacy Act of 1986) (as amended, October 26, 2001), you are hereby directed to provide to the Federal Bureau of Investigation (FBI) the subscriber's name, address, length of service, and electronic communication transactional records, to include existing transaction/activity logs and all electronic mail (e-mail) header information (not to include message content and/or subject fields), for the below-listed address holders:



Please see the attachment following this letter for the types of information that you might consider to be a electronic communications transactional record. We are not directing that you should provide, and you should not provide, information pursuant to this letter that would disclose the content of any electronic communication. Title 18, U.S.C., Section 2510(8) defines content as "any information concerning the substance, purport, or meaning of" a communication. Subject lines of e-mails and message content are content information and should not be provided pursuant to this letter.

If the time period noted above is to the "present," that term is intended to direct production of information to the date of the processing of this letter. If providing information to the date of processing is not feasible, please provide information to the date of receipt of this letter.

While fulfilling your obligations under this letter, please do not disable, suspend, lock, cancel or interrupt service to the above-described subscriber(s) or accounts. A service interruption or degradation may alert the subscriber(s)/account users(s) that investigative action is being taken. If you are not able to fulfill your obligations under this letter without alerting the subscriber/account user, please contact the FBI prior to proceeding.

In accordance with Title 18, U.S.C., Section 2709(b), I certify that the information sought is relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities, and that such an investigation of a United States person is not conducted solely on the basis of activities protected by the First Amendment to the Constitution of the United States.

In accordance with 18 U.S.C. § 2709(c)(1), I certify that a disclosure of the fact that the FBI has sought or obtained access to the information sought by this letter may endanger the national security of the United States, interfere with a criminal, counterterrorism, or counterintelligence investigation, interfere with diplomatic relations, or endanger the life or physical safety of a person. Accordingly, 18 U.S.C. § 2709(c)(1) and (2) prohibits you, or any officer, employee, or agent of yours, from disclosing this letter, other than to those to whom disclosure is necessary to comply with the letter or to an attorney to obtain legal advice or legal assistance with respect to this letter.

In accordance with 18 U.S.C. § 2709(c)(3), you are directed to notify any persons to whom you have disclosed this letter that they are also subject to the nondisclosure requirement and are therefore also prohibited from disclosing the letter to anyone else.

In accordance with 18 U.S.C. § 2709(c)(4), if the FBI asks for the information, you should identify any person to whom such disclosure has been made or to whom such disclosure will be made. In no instance will you be required to identify any attorney to whom disclosure was made or will be made in order to obtain legal advice or legal assistance with respect to this letter.

In accordance with 18 U.S.C. § 3511(a) and (b)(1), you have a right to challenge this letter if compliance would be unreasonable, oppressive, or otherwise unlawful and the right to challenge the nondisclosure requirement set forth above.

In accordance with 18 U.S.C. § 3511(c), an unlawful failure to comply with this letter, including any nondisclosure requirement, may result in the United States bringing an enforcement action.

You are requested to provide records responsive to this request personally to a representative of the FBI ████████████████ or through use of a delivery service or through secure fax within fourteen (14) business days of receipt of this letter.

Any questions you have regarding this request should be directed only to the FBI ████████████████ depending on whether the service is personal or through a delivery service. Due to security considerations, you should neither send the records through routine mail nor disclose the substance of this request in any telephone conversation.

Your cooperation in this matter is greatly appreciated.

Sincerely,

Arthur M. Cummings II
Deputy Assistant Director
Counterterrorism Division

2

### ATTACHMENT

In preparing your response to this National Security Letter, you should determine whether your company maintains the following types of information which may be considered by you to be an electronic communications transactional record in accordance with Title 18 United States Code Section 2709.



- Any other information which you consider to be an electronic communication transactional record

We are not directing that you should provide, and you should not provide, information pursuant to this letter that would disclose the content of any electronic communication as defined in Title 18 United States Code Section 2510(8). Subject lines of e-mails are content information and should not be provided pursuant to this letter. If the records provided are particularly large we request that you provide this information in electronic format preferably on a CR-ROM or DVD.

3

ORIGINAL
FILED

DEC 14 PM 12:18

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   MELISSA GOODMAN (NY SB # 4224339)
    mgoodman@aclu.org
2   JAMEEL JAFFER (NY SB # 3064219)
    jjaffer@aclu.org
3   L. DANIELLE TULLY (NY SB # 4334512)
    dtully@aclu.org
4   American Civil Liberties Union Foundation
    125 Broad Street, 18th Floor
5   New York, NY 10004-2400
    Telephone: (212) 549-2500                    CINDY COHN (SB # 145997)
6   Facsimile: (212) 549-2680     SEALED         cindy@eff.org
                              BY COURT ORDER     KURT OPSAHL (SB # 191303)
7   ANN BRICK (SB # 65296)                       kurt@eff.org
    abrick@aclunc.org                            MARCIA HOFMANN (SB # 250087)
8   American Civil Liberties Union Foundation    marcia@eff.org
      of Northern California, Inc.               Electronic Frontier Foundation
9   39 Drumm Street                              454 Shotwell Street
    San Francisco, CA 94111                      San Francisco, CA 94110
10  Telephone: (415) 621-2493                    Telephone: (415) 436-9333
    Facsimile: (415) 255-8437                    Facsimile: (415) 436-9993
11
    Counsel for Plaintiffs
12  *Pro hac vice applications to be filed upon the assignment of this case to a judge.

                                                                            CW
13              UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
14                SAN FRANCISCO DIVISION

15  INTERNET ARCHIVE; AMERICAN CIVIL          )   Case No.
16  LIBERTIES UNION; AMERICAN CIVIL           )
    LIBERTIES UNION FOUNDATION;               )
17  AMERICAN CIVIL LIBERTIES UNION OF         )   COMPLAINT FOR DECLARATORY
    NORTHERN CALIFORNIA, INC.;                )   AND INJUNCTIVE RELIEF
18  AMERICAN CIVIL LIBERTIES UNION            )
19  FOUNDATION OF NORTHERN                    )
    CALIFORNIA, INC.; and ELECTRONIC          )   DOCUMENT SUBMITTED UNDER
20  FRONTIER FOUNDATION,                      )   SEAL
                            Plaintiffs,       )
21       v.                                   )
22  MICHAEL B. MUKASEY, in his official       )
    capacity as Attorney General of the United )
23  States; ROBERT S. MUELLER III, in his     )
    official capacity as Director of the Federal )
24  Bureau of Investigation; and ARTHUR M.    )
    CUMMINGS II, in his official capacity as  )
25  Deputy Assistant Director of the          )
26  Counterterrorism Division of the Federal Bureau )
    of Investigation,                         )
27                          Defendants.       )
                                              )
28  _____)

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.    Plaintiffs the Internet Archive ("the Archive"), the American Civil Liberties
Union ("ACLU"), the American Civil Liberties Union Foundation ("ACLUF"), the American
Civil Liberties Union of Northern California, Inc. ("ACLU-NC"), the American Civil Liberties
Union Foundation of Northern California, Inc. ("ACLUF-NC"), and the Electronic Frontier
Foundation ("EFF") challenge the facial and as-applied constitutionality of 18 U.S.C. §§ 2709,
3511 (collectively, "the NSL statute"), which authorize the Federal Bureau of Investigation
("FBI") to issue national security letters ("NSLs") and to impose broad and effectively
permanent non-disclosure obligations on those served with NSLs. *See* 18 U.S.C. §§ 2709, 3511,
as amended by the USA PATRIOT Act, Pub. L. 107-56 ("Patriot Act"); by the USA PATRIOT
Improvement and Reauthorization Act of 2005, Pub. L. 109-177 ("PIRA"); and by the USA
PATRIOT Act Additional Reauthorizing Amendments Act of 2006, Pub. L. 109-178
("ARAA").

2.    The Archive is a digital library co-founded by Brewster Kahle and incorporated
as a 501(c)(3) non-profit organization in California. An agent of the FBI served an NSL (the
"November 2007 NSL") on the Archive through its legal representative, EFF, on November 26,
2007. The November 2007 NSL directed the Archive to disclose records pertaining to one of its
patrons. The November 2007 NSL also referenced the NSL statute's gag provisions codified in
18 U.S.C. §§ 2709(c), 3511(b), and expressly prohibited the Archive, its officers, employees,
and agents from disclosing that the FBI had demanded information from it through the NSL.

3.    The NSL statute is unconstitutional because its gag and secrecy provisions
violate the First and Fifth Amendments and because those provisions are not severable from
the remainder of the NSL statute. The statute allows the FBI to issue gag orders prohibiting
NSL recipients from disclosing that the FBI has sought or obtained information from them.
The gag orders are issued by the FBI unilaterally, without prior judicial review. While the
statute permits NSL recipients to challenge gag orders in court, reviewing courts are permitted
to modify or vacate such orders only in extraordinary circumstances, and in some instances
they are required to treat the FBI's certification that secrecy is necessary as conclusive. In

-2-

1   addition, the NSL statute throws a heavy blanket of secrecy over litigation relating to NSLs.

2   Notably, the one court that has already considered the constitutionality of the NSL statute

3   concluded that the law's gag provisions violate the First Amendment and the principle of

4   separation of powers, and that the entire statute is unconstitutional because those gag

5   provisions are not severable. *Doe v. Gonzales*, 500 F. Supp.2d 379 (S.D.N.Y. 2007).

6       4.      For these reasons and others set forth below, Plaintiffs seek, *inter alia*, a

7   declaration that the NSL statute is unconstitutional on its face and an injunction prohibiting the

8   FBI from issuing NSLs under the statute. Plaintiffs also seek a declaration that the November

9   2007 NSL is unconstitutional and an injunction prohibiting the FBI from enforcing it. The

10  Archive would comply with a lawful demand for information and in the past has complied with

11  lawful government subpoenas. It should not, however, be required to comply with demands

12  issued under a statute that is unconstitutional on its face.

13

14                          **JURISDICTION AND VENUE**

15      5.      This case arises under the United States Constitution and the laws of the United

16  States and presents a federal question under Article III of the United States Constitution and 28

17  U.S.C. § 1331. The Court also has authority to grant declaratory and injunctive relief pursuant

18  to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* The Court has authority to award

19  costs and attorneys' fees under 28 U.S.C. § 2412.

20      6.      Venue is proper in this district under 28 U.S.C. § 1391(e).

21

22                          **INTRADISTRICT ASSIGNMENT**

23      7.      This case is properly assigned to the San Francisco Division pursuant to Civil

24  Local Rule 3-2(c) and (d) because a substantial portion of the events giving rise to this action

25  occurred in the County of San Francisco.

26  //

27  //

28                                  -3-

**PARTIES**

8.     The Archive is a digital library founded in 1996, incorporated as a 501(c)(3) non-profit organization with its principal place of business in San Francisco, California. The Archive offers permanent access for researchers, historians, and scholars to its vast and growing collections of books, videos, web pages, software and other digital information. The Archive sues on its own behalf.

9.     Plaintiff ACLU is a nationwide, non-profit, non-partisan organization with more than 500,000 members dedicated to the constitutional principles of liberty and equality. The ACLU is a 501(c)(4) organization. The ACLU's activities include lobbying Congress on legislation that affects civil liberties, analyzing and educating the public about such legislation, and mobilizing ACLU members and activists to lobby their legislators to protect civil rights and civil liberties. The ACLU sues on its own behalf and on behalf of its members.

10.     Plaintiff ACLUF is a 501(c)(3) organization that educates the public about civil liberties and that employs lawyers who provide legal representation free of charge in cases involving civil liberties. As counsel to the Archive and privy to the information contained in the NSL served on the Archive, lawyers employed by ACLUF are subject to the NSL statute's gag provisions.

11.     Plaintiff ACLU-NC is the largest regional affiliate of the ACLU, with more than 50,000 members. The ACLU-NC is a 501(c)(4) organization. The ACLU-NC's activities include lobbying the state legislature and members of the Northern California Congressional delegation on legislation that affects civil liberties, analyzing and educating the public about such legislation, and mobilizing ACLU-NC members and activists to lobby their legislators to protect civil rights and civil liberties. The ACLU-NC sues on its own behalf and on behalf of its members.

12.     Plaintiff ACLUF-NC is a 501(c)(3) organization that educates the public about civil liberties and that employs lawyers who provide legal representation free of charge in cases involving civil liberties. As counsel to the Archive and privy to the information contained in

-4-

1   the NSL served on the Archive, lawyers employed by ACLUF-NC are subject to the NSL
2   statute's gag provisions.

3       13.    Plaintiff EFF is a non-profit civil liberties organization working to protect rights
4   in the digital world. EFF actively encourages and challenges industry and government to
5   support free expression and privacy in the information society. Founded in 1990, EFF is based
6   in San Francisco, California. As counsel to the Archive and privy to the information contained
7   in the NSL served on the Archive, lawyers employed by EFF are subject to the NSL statute's
8   gag provisions.

9       14.    Defendant Attorney General Michael Mukasey heads the United States
10   Department of Justice ("DOJ"), which is the agency of the United States government
11   responsible for enforcing federal criminal laws and overseeing domestic intelligence
12   investigations. Defendant Mukasey has ultimate authority for supervising all of the DOJ's
13   operations and functions. The DOJ includes the FBI, the agency authorized to use the law
14   challenged in this case.

15       15.    Defendant Robert Mueller is the Director of the FBI and is responsible for
16   supervising all of that agency's operations. The FBI is the agency authorized to use the law
17   challenged in this case.

18       16.    Defendant Arthur M. Cummings II is a Deputy Assistant Director of the FBI's
19   Counterterrorism Division. Defendant Cummings signed the November 2007 NSL issued to
20   the Archive.

21

22                      **STATUTORY BACKGROUND**

23                        The NSL Authority

24       17.    The NSL statute was enacted by Congress in 1986 as part of the Electronic
25   Communications Privacy Act of 1986. *See* Pub. L. 99-508, Title II, § 201 (codified as 18
26   U.S.C. § 2510 *et seq.*). As described further below, the NSL statute has been modified
27   multiple times since its initial passage.

28

-5-

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    18.    In its current form, the NSL statute authorizes the FBI to issue NSLs ordering

2    "wire or electronic communication service provider[s]" to disclose "subscriber information,"

3    "toll billing records information," and "electronic communication transactional records" upon a

4    certification that the information sought is "relevant to an authorized investigation to protect

5    against international terrorism or clandestine intelligence activities." 18 U.S.C. §§ 2709(a),

6    (b)(1). The NSL statute also allows the FBI to impose non-disclosure obligations, or gag

7    orders, on anyone it serves with an NSL.

8    19.    As originally enacted, the NSL statute could be used exclusively against people

9    suspected of espionage. The FBI could issue NSLs only if it certified that (i) the information

10    sought was relevant to an authorized foreign counterintelligence investigation; *and* (ii) there

11    were specific and articulable facts establishing reason to believe that the subject of the NSL

12    was a foreign power or foreign agent. 18 U.S.C. § 2709 (1986). Congress subsequently

13    amended the statute in 1993 and 1996, each time extending its reach. *See* Pub. L. 103-142

14    (1993); Pub. L. 104-293, Title VI, § 601(a) (1996).

15    20.    In 2001, through the Patriot Act, Congress expanded the FBI's power to issue

16    NSLs once again by, *inter alia*, removing the individualized suspicion requirement. Pub. L.

17    107-56, Title V, § 505(a). The NSL statute now permits the FBI to issue an NSL if the

18    information sought is believed to be "relevant" to "an authorized investigation to protect

19    against international terrorism or clandestine intelligence activities." *See* 18 U.S.C.

20    § 2709(b)(1). Consequently, the FBI may now use NSLs to obtain sensitive information about

21    innocent individuals who have no connection to terrorism or espionage. The statute does not

22    require the FBI to seek judicial approval prior to issuing an NSL.

23    21.    Pursuant to amendments made to the NSL statute in 2006, the Attorney General

24    may compel compliance with the NSL request by "invok[ing] the aid of any district court of

25    the United States within the jurisdiction in which the investigation is carried on or the person or

26    entity [served with the NSL] resides, carries on business, or may be found." 18 U.S.C.

27

28                                              -6-

1    § 3511(c).  If a court issues an order requiring compliance with an NSL, non-compliance may

2    be punished by the court as contempt.  *Id.*

3        22.    Although NSL recipients were initially prohibited from challenging NSLs,

4    Congress amended the statute in 2006 to permit those served with NSLs to "petition for an

5    order modifying or setting aside the request." *Id.* § 3511(a).  If the recipient of an NSL files

6    such a petition, the reviewing court may modify or set aside the NSL "if compliance would be

7    unreasonable, oppressive, or otherwise unlawful." *Id.*

8                          Gag and Secrecy Provisions

9        23.    In its current form, the NSL statute allows the Director of the FBI or his

10   designee (including a Special Agent in Charge of a Bureau field office) to impose a broad and

11   effectively permanent non-disclosure order – or gag order – on any person or entity served with

12   an NSL.  18 U.S.C. § 2709(c).

13       24.    The Director or his designee can impose this gag order simply by "certifying" to

14   himself or herself that, absent the non-disclosure obligation, "there may result a danger to the

15   national security of the United States, interference with a criminal, counterterrorism, or

16   counterintelligence investigation, interference with diplomatic relations, or danger to the life or

17   physical safety of any person." *Id.* § 2709(c)(1).  Once the Director of the FBI or his designee

18   so certifies and notifies the NSL recipient, the recipient of the NSL is prohibited from

19   "disclos[ing] to any person (other than those to whom such disclosure is necessary to comply

20   with the request or an attorney to obtain legal advice or legal assistance with respect to the

21   request) that the [FBI] has sought or obtained access to information or records under [the NSL

22   statute]." *Id.*  The gag order extends to any person consulted in order to comply with the NSL,

23   and to any attorney consulted for legal advice or assistance with respect to the request. *Id.*

24       25.    The gag order is imposed upon the FBI's certification.  No judge considers,

25   before the gag order is imposed, whether secrecy is necessary or whether the gag order is

26   narrowly tailored.

27

28                              -7-

1     26.    The gag provisions permit the recipient of an NSL to petition a court "for an

2 order modifying or setting aside a nondisclosure requirement." *Id.* § 3511(b)(1). The

3 reviewing court, however, may modify or set aside the nondisclosure requirement only if it

4 finds that there is "no reason to believe that disclosure may endanger the national security of

5 the United States, interfere with a criminal, counterterrorism, or counterintelligence

6 investigation, interfere with diplomatic relations, or endanger the life or physical safety of any

7 person." *Id.* § 3511(b)(2). If a designated senior government official certifies that "disclosure

8 may endanger the national security of the United States or interfere with diplomatic relations,"

9 the certification must be "treated as conclusive unless the court finds that the certification was

10 made in bad faith." *Id.*

11     27.    In the case of a petition filed under § 3511(b)(1) "one year or more after the

12 request for records," the FBI Director or his designee must either terminate the non-disclosure

13 obligation within 90 days or recertify that disclosure may result in one of the enumerated

14 harms. *Id.* § 3511(b)(3). If the FBI recertifies that disclosure may be harmful, however, the

15 reviewing court is required to apply the same extraordinarily deferential standards it applies to

16 petitions filed within one year. *Id.* If a designated senior official recertifies that disclosure

17 may endanger the national security of the United States or interfere with diplomatic relations

18 the recertification must be "treated as conclusive unless the court finds that the recertification

19 was made in bad faith." *Id.*

20     28.    Those who violate a gag order issued under the NSL statute may be subject to

21 criminal penalties. *See* 18 U.S.C. § 1510(e) ("Whoever, having been notified of the applicable

22 disclosure prohibitions or confidentiality requirements of [the NSL statute] . . . knowingly and

23 with the intent to obstruct an investigation or judicial proceeding violates such prohibitions or

24 requirements applicable by law to such person shall be imprisoned for not more than five years,

25 fined under this title, or both.").

26     29.    Petitions challenging NSL record demands and gag orders are required by the

27 PIRA and ARAA to be heard in extraordinary secrecy. A reviewing court must "close any

28

-8-

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1     hearing to the extent necessary to prevent an unauthorized disclosure of a request for records."

2     18 U.S.C. § 3511(d). The court must also keep petitions, records, filings, orders and subpoenas

3     under seal "to the extent and as long as necessary to prevent the unauthorized disclosure." *Id.*

4     Upon request of the government, the reviewing court is also required to "review *ex parte* and *in*

5     *camera* any government submission or portions thereof, which may include classified

6     information." *Id.* § 3511(e).

7

8                                **FACTUAL BACKGROUND**

9        30.     The Archive was established as a digital library in 1996. Its overarching

10     mission is to provide universal access to all knowledge. Located and incorporated as a

11     501(c)(3) non-profit in California, the Archive is governed by a three-member board of

12     directors. The Archive has more than one hundred employees.

13        31.     The Archive is not a traditional library, but it is a library nonetheless. It is

14     formally recognized as a library by the State of California, enabling it to satisfy the statutory

15     definition of a library found in the 1996 Library Services and Technology Act, 20 U.S.C.

16     § 9122(1)(E). The Archive has been a member of the American Library Association since

17     2000.

18        32.     To fulfill its mission, the Archive works with national libraries, museums,

19     universities, and the general public to collect and offer free access to materials in digital

20     format. Some of its partners include the Library of Congress, the National Archives, and the

21     British Library. The Archive has collected snapshots of billions of public web pages, except

22     those that have opted not to be archived, every two months for the last ten years. In addition,

23     the Archive has digitized archival and educational movies since 1999. The Archive also

24     accepts donated material, including audio and video recordings, from individual patrons. To

25     ensure continued access, the Archive provides permanent, archival storage and preservation

26     services for this extensive digital material.

27

28

33.     The Archive has been involved in several book digitization projects and has formed the Open Content Alliance, which includes contributions from more than seventy contributing libraries, to build joint collections of digitized public domain books. The Archive's book collection now contains over 200,000 volumes.

34.     As a library, the Archive actively works to serve its patrons as a resource for exploration, research, and learning. Many of the Archive's resources come from patrons' donations. Providing a safe environment for patrons' activities has long been an important function of libraries with physical materials. The Archive seeks to continue this practice for those patrons interacting with digital materials through its website.

35.     Just as an individual may anonymously walk into a non-digital library and browse its shelves, an individual wishing to view digital materials may browse those materials on the Archive's website as an "anonymous user" – that is to say, without logging in to the website. However, individuals who would like to upload materials, post reviews, or communicate on message boards must first register with the Archive and be logged into his or her account. To register, an individual must agree to "Terms of Use," provide a "valid" (although unverified) e-mail address, create a password, and supply a screen name.

### The November 2007 NSL

36.     The Archive has worked with various federal government agencies, including the DOJ, the FBI, and the Central Intelligence Agency. Many U.S. Attorneys and other law enforcement officials find the Archive a valuable resource, and the Archive has regularly received requests for information about its collections (most frequently, for information stored in the Wayback Machine, a historical archive of websites).

37.     In July of 2007, Special Agent Scott Rakowitz and Supervisory Special Agent Chuck Esposito of the San Francisco office of the FBI met with EFF, whose attorneys represent the Archive for various purposes. At that meeting, EFF agreed that it would accept service of legal process from the United States on behalf of the Archive.

-10-

1    38.    On Monday, November 26, 2007, Supervisory Special Agent ████ left a

2    voicemail message for Kurt Opsahl, a Senior Staff Attorney at EFF. Similar messages were

3    left with Senior Staff Attorney Lee Tien and Staff Attorney Kevin Bankston. The messages

4    informed them that an FBI agent would be coming to EFF's office that day. Bankston returned

5    the message, spoke with Supervisory Special Agent ████ and learned that an FBI agent

6    would be serving an NSL at EFF's office.

7    39.    Later that morning, Special Agent ████████ arrived at EFF's office, met

8    with Bankston, and served an NSL dated November 19, 2007 ("November 2007 NSL"). The

9    November 2007 NSL is printed on FBI letterhead, is addressed to the Internet Archive, and is

10    signed by Arthur M. Cummings II, Deputy Assistant Director, Counterterrorism Division of the

11    FBI.

12    40.    The November 2007 NSL letter states that the Archive is "hereby directed to

13    provide the [FBI] the subscriber's name, address, length of service, and electronic

14    communication transactional records, to include existing transaction/activity logs and all

15    electronic mail (e-mail) header information (not to include message content and/or subject

16    fields)" pertaining to ████████████████████████

17    ████████

18    41.    The November 2007 NSL also includes a certification that "the information

19    sought is relevant to an authorized investigation to protect against international terrorism or

20    clandestine intelligence activities."

21    42.    Parroting the language of the NSL statute's gag certification provision, the

22    November 2007 NSL includes a certification that the "disclosure of the fact that the FBI has

23    sought or obtained access to the information sought by this letter may endanger the national

24    security of the United States, interfere with a criminal, counterterrorism, or counterintelligence

25    investigation, interfere with diplomatic relations, or endanger the life or physical safety of a

26    person." The certification does not specify which of these harms may result from disclosure.

27

28

-11-

43. The November 2007 NSL further advises the Archive that the NSL statute "prohibits you, or any officer, employee, or agent of yours, from disclosing this letter, other than to those to whom disclosure is necessary to comply with the letter or to an attorney to obtain legal advice or legal assistance with respect to this letter."

44. Appended to the November 2007 NSL is a page titled "ATTACHMENT" that states, "In preparing your response to this National Security Letter, you should determine whether your company maintains the following types of information which may be considered by you to be an electronic communications transactional record in accordance with Title 18 United States Code Section 2709." The page then lists, among other things █████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████ and "Any other information which you consider to be an electronic communication transactional record."

45. The November 2007 NSL requires that the Archive provide the requested information "personally to a representative of the FBI ██████████████ or through use of delivery service or through secure fax within fourteen (14) business days of receipt of this letter."

46. On Tuesday, November 27, 2007, Opsahl and EFF Staff Attorney Marcia Hofmann brought the November 2007 NSL to the Archive and showed it to Brewster Kahle, Chair of the Archive's Board of Directors as well as one of the Archive's Digital Librarians.

47. On Wednesday, November 28, 2006, Special Agent ██████ left a message for Bankston inquiring about the status of the Archive's response. Later that day, Opsahl spoke by telephone with Special Agent ██████ and informed him that the Archive was reviewing and considering the letter, and notified him, pursuant to 18 U.S.C. § 2709(c)(4), that the Archive would be bringing in additional counsel.

48. The NSL statute and the November 2007 NSL have prevented the Archive from disclosing information about the November 2007 NSL and this lawsuit to the Archive's Board of Directors and staff.

-12-

49. The NSL statute and the November 2007 NSL have prevented the Archive from disclosing information about the November 2007 NSL and this lawsuit to the Archive's patrons.

50. The NSL statute and the November 2007 NSL have prevented the Archive from disclosing information about the November 2007 NSL and this lawsuit to other libraries.

51. The NSL statute and the November 2007 NSL have prevented the plaintiffs from disclosing information about the November 2007 NSL and this lawsuit to the press and public.

52. The NSL statute and the November 2007 NSL have prevented the plaintiffs from disclosing information about the November 2007 NSL to Congress, where bills to amend the NSL statute are currently pending in both the House and Senate. The NSL statute and the November 2007 NSL have prevented the plaintiffs from publicly advocating for legislative change with respect to the NSL statute.

## CAUSES OF ACTION

53. The NSL statute, on its face and as applied through the November 2007 NSL, violates the First Amendment by investing the FBI with the authority to suppress speech without meaningful judicial review, unconstrained by definite and objective standards, and without requiring that gag orders issued under the statute be narrowly tailored to a compelling government interest.

54. The NSL statute, on its face and as applied through the November 2007 NSL, violates the principle of separation of powers by effectively transferring to the executive branch the final authority to determine whether speech should or should not be suppressed.

55. The NSL statute, on its face and as applied through the November 2007 NSL, violates the First and Fifth Amendments by requiring courts that review non-disclosure orders and challenges to NSLs to close hearings and seal judicial documents even where there is no compelling need for secrecy.

56.     The NSL statute, on its face and as applied through the November 2007 NSL, violates the First and Fifth Amendments by requiring courts that review non-disclosure orders and challenges to NSLs to review government filings *ex parte* and *in camera* upon the government's request.

57.     The gag order imposed by the November 2007 NSL is unlawful because it fails to certify the specific harm that may result from disclosure.

58.     The November 2007 NSL is unlawful because the Archive is not an electronic communication service provider.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully request that the Court:

1.      Declare that 18 U.S.C. §§ 2709(c) and 3511(b) violate the First Amendment and the principle of separation of powers.

2.      Declare that 18 U.S.C. §§ 3511(d) and 3511(e) violate the First and Fifth Amendments.

3.      Declare that 18 U.S.C. §§ 2709(c) and 3511(b) are not severable from the remainder of the NSL statute.

4.      Declare that the November 2007 NSL is unconstitutional under the First and Fifth Amendments and under the principle of separation of powers.

5.      Permanently enjoin the defendants from seeking to enforce the November 2007 NSL or from penalizing plaintiffs for failing to comply with it.

6.      Permanently enjoin the defendants from using the NSL statute against the plaintiffs or any other person or entity.

//
//
//
//

-14-

1    7.    Award the plaintiffs fees and costs.

2    8.    Grant such other and further relief as the Court deems just and proper.

3                                          Respectfully submitted,

4

5                                          MELISSA GOODMAN
                                           JAMEEL JAFFER
6                                          L. DANIELLE TULLY
                                           American Civil Liberties Union
7                                             Foundation
                                           National Security Project
8

9                                               ANN BRICK
                                           American Civil Liberties Union
10                                            Foundation of Northern California,
                                              Inc.
11

12                                         By: _____
                                                  ANN BRICK
13                                         Counsel for Plaintiffs

14

15                                         CINDY COHN
                                           KURT OPSAHL
16                                         MARCIA HOFMANN
                                           Electronic Frontier Foundation
17

18                                         By: _____
                                                  MARCIA HOFMANN
19                                         Counsel for Plaintiffs

20    December 14, 2007

21

22

23

24

25

26

27

28
                                -15-

1   MELISSA GOODMAN (NY SB # 4224333)*
    mgoodman@aclu.org
2   JAMEEL JAFFER (NY SB # 3064201)*
    jjaffer@aclu.org
3   L. DANIELLE TULLY (NY SB # 4334512)*
    dtully@aclu.org
4   American Civil Liberties Union Foundation
    125 Broad Street, 18th Floor
5   New York, NY 10004-2400
    Telephone: (212) 549-2500
6   Facsimile: (212) 549-2680

7   ANN BRICK (SB # 65296)
    abrick@aclunc.org
8   American Civil Liberties Union Foundation
      of Northern California, Inc.
9   39 Drumm Street
    San Francisco, CA 94111
10  Telephone: (415) 621-2493
    Facsimile: (415) 255-8437

        CINDY COHN (SB # 145997)
        cindy@eff.org
        KURT OPSAHL (SB # 191303)
        kurt@eff.org
        MARCIA HOFMANN (SB # 250087)
        marcia@eff.org
        Electronic Frontier Foundation
        454 Shotwell Street
        San Francisco, CA 94110
        Telephone: (415) 436-9333
        Facsimile: (415) 436-9993

11  Counsel for Petitioner
12  *Pro hac vice applications to be filed upon the assignment of this case to a judge.

13                  UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
14                     SAN FRANCISCO DIVISION

15  INTERNET ARCHIVE; AMERICAN CIVIL        )   Case No. _____
16  LIBERTIES UNION; AMERICAN CIVIL         )
    LIBERTIES UNION FOUNDATION;             )
17  AMERICAN CIVIL LIBERTIES UNION OF       )   MEMORANDUM OF POINTS AND
    NORTHERN CALIFORNIA, INC.;              )   AUTHORITIES IN SUPPORT OF
18  AMERICAN CIVIL LIBERTIES UNION          )   PETITION OF PLAINTIFF INTERNET
    FOUNDATION OF NORTHERN                  )   ARCHIVE TO SET ASIDE NATIONAL
19  CALIFORNIA, INC.; and ELECTRONIC        )   SECURITY LETTER
    FRONTIER FOUNDATION,                    )
20                          Plaintiffs,     )
                                            )   DOCUMENT SUBMITTED UNDER
21          v.                              )   SEAL
                                            )
22  MICHAEL B. MUKASEY, in his official     )
    capacity as Attorney General of the United )
23  States; ROBERT S. MUELLER III, in his   )
    official capacity as Director of the Federal )
24  Bureau of Investigation; and ARTHUR M.  )
    CUMMINGS II, in his official capacity as )
25  Deputy Assistant Director of the        )
    Counterterrorism Division of the Federal Bureau )
26  of Investigation,                       )
                                            )
27                          Defendants.     )
                                            )
28

1

## TABLE OF CONTENTS

2

TABLE OF AUTHORITIES ............................................................................................................ii

3

INTRODUCTION ...........................................................................................................................1

4

STATEMENT OF FACTS ..............................................................................................................2

5

    A.  The Internet Archive. ......................................................................................................2

6

    B.  The November 2007 National Security Letter. ...............................................................3

7

ARGUMENT ...................................................................................................................................

8

I.      THE NOVEMBER 2007 NSL IS NOT AUTHORIZED BY 18 U.S.C. § 2709 ..............6

9

    A.  The Archive Is A User, Not A Provider of An Electronic Communication
        Service.............................................................................................................................. 6

10

    B.  In Allowing Patrons ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the Archive Is
        Providing Storage and Preservation Services and Therefore Is Not an ECS
        Provider .......................................................................................................................... 9

11

II.     THE ARCHIVE IS NOT SUBJECT TO THE NOVEMBER 2007 NSL
       BECAUSE IT IS A LIBRARY PURSUANT TO 18 U.S.C. § 2709(F) ........................11

12

III.    THE NOVEMBER 2007 NSL IS UNCONSTITUTIONAL BECAUSE IT
      VIOLATES THE FIRST AMENDMENT ...................................................................12

CONCLUSION ..............................................................................................................................13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Crowley v. Cybersource Corp.*, 166 F.Supp.2d 1263 (N.D. Cal. 2001)........................................7

*Doe v. Gonzales*, 500 F.Supp.2d 379 (S.D.N.Y. 2007), *appeal pending*..........................1, 10, 12

*In re Doubleclick Privacy Litigation*, 154 F.Supp.2d 497 (S.D.N.Y. 2001).............................7, 8

*Dyer v. Northwest Airlines Corporations*, 334 F.Supp.2d 1196 (D.N.D. 2004)...........................7

*In re Broadcast.com, Inc.*, 2001 WL 36050382 (E.D. Tex. 2001).........................................7

*In re JetBlue Airways Corp. Privacy Litigation*, 379 F.Supp.2d 299 (E.D.N.Y. 2005)..............7, 8

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002).......................................11

*Quon v. Arch Wireless Operating Company, Inc.*, 445 F.Supp.2d 1116 (C.D. Cal. 2006) ...........................................................................................................9, 10, 11

*United States v. Mullins*, 992 F.2d 1472 (9th Cir. 1993)...............................................8

*United States v. Steiger*, 318 F.3d 1039 (11th Cir. 2003) ............................................10

*United States. v. Jackson*, 2007 WL 3230140 (D.D.C. 2007)............................................10

## FEDERAL STATUTES

18 U.S.C. § 2510 .........................................................................................6, 11

18 U.S.C. § 2709 .......................................................................................*passim*

18 U.S.C. § 2711 ............................................................................................6

18 U.S.C. § 3511 ........................................................................................1, 12

20 U.S.C. § 9122 ......................................................................................9, 11

## MISCELLANEOUS

Orin S. Kerr, *A User's Guide to the Stored Communications Act—and a Legislator's Guide to Amending It*, 72 Geo.Wash.L.Rev. 1208 (2004) ...........................................................9

S. Rpt. No. 99-541 (1986) .................................................................................9

U.S. Dep't of Justice, Criminal Division, Computer Crime and Intellectual Property Section, *Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations* (July 2002)..........................................................................9

1
## INTRODUCTION

2          On November 26, 2007, an agent of the Federal Bureau of Investigation ("FBI") served a

3    National Security Letter ("NSL") pursuant to 18 U.S.C. § 2709 on petitioner Internet Archive

4    ("Archive"), demanding that it turn over records about one of its patrons.  An NSL is akin to an

5    administrative subpoena.  Through NSLs, the FBI can demand records from an electronic

6    communication service provider so long as the FBI certifies that the information sought is relevant

7    to a counter-terrorism or counter-intelligence investigation.  *See* 18 U.S.C. § 2709(a)-(b).  The

8    NSL statute also permits the FBI to impose broad and effectively permanent gag orders on an NSL

9    recipient.  *See* 18 U.S.C. § 2709(c).  Where the FBI certifies that certain harms may result from

10   disclosure, *see* 18 U.S.C. § 2709(c), the recipient is prohibited from disclosing that the FBI has

11   sought or obtained information.  *Id.*  The NSL served on the Archive ("November 2007 NSL")

12   demanded that it disclose the subscriber name, address, length of service, and electronic

13   communication transactional records related to ███████████████████████████████

14   ████████████ the Archive's services.    It also imposed a gag order on the Archive, its

15   officers, its employees, and its agents.

16          As authorized by 18 U.S.C. § 3511(a), the Archive asks this Court to issue an order setting

17   aside the NSL on the ground that the demand for records is unlawful for several reasons.  First,

18   section 2709 only authorizes the issuance of an NSL to an electronic communication service

19   provider.  But the Archive is not such a provider for two reasons: (1) in permitting patrons to

20   upload materials to the site, the Archive is not acting as a *provider* of an electronic communication

21   service; and (2) the Archive is a library which, pursuant to 18 U.S.C. § 2709(f), is not a provider of

22   electronic communication services.  Second, the provision governing the gag order in the

23   November 2007 NSL, 18 U.S.C. § 2709(c), is unconstitutional on its face.  Since that provision is

24   not severable from the remainder of the statute, the entire NSL statute is unconstitutional, as one

25   court has already concluded.  *See Doe v. Gonzales*, 500 F. Supp. 2d 379 (S.D.N.Y. 2007), *appeal

26   pending*.  Because the November 2007 NSL was issued under a facially unconstitutional statute, it

27   is unlawful.

28

1

**STATEMENT OF FACTS**

2      A.    The Internet Archive

3          The Internet Archive is a digital library established in San Francisco, California in 1996.

4      Declaration of Brewster Kahle ("Kahle Decl.") ¶ 4; Internet Archive, About IA,

5      http://www.archive.org/about/about.php (last visited Dec. 13, 2007), attached to Kahle Decl. as Ex.

6      A. Its overarching mission is to help provide universal access to all knowledge. *Id.* ¶ 5.   To fulfill

7      that mission, the Archive works with national libraries, museums, universities, and the general

8      public to collect and offer free access to a wide variety of materials in digital format. *Id.* ¶ 6.

9      Some of its partners include the Library of Congress, the National Archives, and the British

10     Library. *Id.* ¶ 9.  The State of California has formally recognized the Archive as a library for the

11     purposes of the 1996 Library Services and Technology Act, 20 U.S.C. § 9122(1)(E). *Id.* ¶ 10 and

12     Ex. B.  The Archive has been a member of the American Library Association since 2000. *Id.* ¶ 10.

13         One of the unique features of the Archive is the "Wayback Machine," which allows people

14     to visit archived versions of websites.  Visitors to the Wayback Machine can type in a URL, select

15     a date, and then begin surfing on an archived version of the Web.  Kahle Decl. ¶ 11.  The Archive

16     has created and maintained the Wayback Machine by collecting snapshots of billions of public web

17     pages, except those that have opted not to be archived, every two months for the last ten years. *Id.*

18         In addition to preserving an archival copy of the Web, the Archive is dedicated to

19     preserving digital copies of other sources of knowledge and culture.  The Archive has digitized

20     archival and education movies since 1999.  Kahle Decl. ¶ 8.  It also has been involved in several

21     book digitization projects in collaboration with other institutions. *Id.* ¶ 9.  In 2005, the Archive

22     formed the Open Content Alliance to build a joint collection of digitized public domain books. *Id.*

23     The Archive's book collection currently contains over 200,000 volumes from over 70 contributing

24     libraries. *Id.*  In fact, the Archive's holdings contain more material than 95% of the world's

25     libraries. *Id.*  All of these materials are available to patrons through the Archive's website.  To

26     ensure continued access to this material, the Archive provides storage and preservation services for

27     its extensive digital collections. *Id.* ¶ 6; *Id.* Ex. A.

28

1       The Archive also accepts donated material that belongs in a library from individual patrons,

2   including audio and video recordings. Kahle Decl. ¶ 6. Thus, members of the public directly

3   contribute resources to the Archive's digital collection. Kahle Decl. ¶ 12. To ensure continued

4   access to this material, as with other portions of its collection, the Archive provides permanent,

5   archival storage and preservation services for these recordings and other materials donated by the

6   public. *Id.* ███████████████████████████████████████

7       As a library, the Archive actively works to serve its patrons as a resource for exploration,

8   research, and learning. Kahle Decl. ¶ 13. Providing a safe environment for a patron's activities

9   has long been an important function of libraries with physical materials. The Archive seeks to

10  continue this practice for those patrons accessing its website. *Id.* An individual wishing to view

11  digital materials on the Archive's website may do so as an "anonymous user"—that is to say,

12  without logging in to the website. *Id.* However, individuals seeking to upload materials, post

13  reviews, or communicate on message boards must first register with the Archive, which includes

14  agreeing to the Archive's "Terms of Use," providing a "valid" (although unverified) e-mail

15  address, creating a password, and supplying a screen name. *Id.* They must then log in to their

16  accounts. *Id.* While the Archive intentionally limits the information that it collects and retains

17  from users, from time to time it may possess some information about its patrons. *Id.* ¶ 14. Such

18  records may include the date the patron's account was opened, the screen names associated with the

19  patron's account, an unconfirmed e-mail address associated with the patron, and messages of those

20  who communicate with the Archive via e-mail. *Id.*

21      **B.      The November 2007 National Security Letter**

22      Many U.S. Attorneys and other law enforcement officials find the Archive a valuable

23  resource, and the Archive has regularly received requests for information about its collections,

24  most frequently for information stored in the Wayback Machine. Kahle Decl. ¶ 15. The Archive

25  regularly interacts with the federal government, including the Department of Justice, the FBI, and

26  the Central Intelligence Agency and has complied with lawful subpoenas requesting information.

27  *Id.*

28

1        In June 2007, Special Agent Scott Rakowitz and Supervisory Special Agent Chuck

2    Esposito of the San Francisco office of the FBI met with attorneys at the Electronic Frontier

3    Foundation ("EFF"), who provide legal representation to the Archive for various purposes.

4    Declaration of Kurt Opsahl ("Opsahl Decl.") ¶ 4.  At that meeting, EFF agreed that it would accept

5    service of any future legal process from the FBI on behalf of the Archive.  *Id.*

6        On Monday, November 26, 2007, Supervising Special Agent ▇▇▇▇ left a voicemail

7    message for Kurt Opsahl, Senior Staff Attorney at EFF.  Opsahl Decl. ¶ 5.  Similar messages were

8    left with Senior Staff Attorney Lee Tien and Staff Attorney Kevin Bankston.  *Id.*  The messages

9    informed them that an FBI agent would be coming to EFF's office that day.  *Id.*  Later that

10    morning, Special Agent ▇▇▇▇▇▇▇▇ arrived at EFF's office, met with Bankston, and served an

11    NSL addressed to the Archive, dated November 19, 2007 ("November 2007 NSL").  *Id.* ¶ 6 and

12    Ex. A to Opsahl Decl.  The November 2007 NSL was signed by defendant Arthur M. Cummings,

13    II, Deputy Assistant Director of the Counterterrorism Division of the FBI.  Opsahl Decl., Ex. A.

14        The November 2007 NSL directs the Archive "to provide the [FBI] the subscriber's name,

15    address, length of service, and electronic communication transactional records" pertaining to a

16    particular ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇  *Id.*  It covers the period ▇▇▇▇▇▇▇

17    ▇▇▇▇▇▇  *Id.*  Parroting the language of the NSL statute's non-disclosure certification

18    provision, 18 U.S.C. §2709(c), the November 2007 NSL includes the following certification:

19            disclosure of the fact that the FBI has sought or obtained access to the information
        sought by this letter may endanger the national security of the United States,

20            interfere with a criminal, counterterrorism, or counterintelligence investigation,
        interfere with diplomatic relations, or endanger the life or physical safety of a

21            person.

22    *Id.*  The certification does not specify which of these harms may result from disclosure.  *Id.*  The

23    November 2007 NSL further advises the Archive that the NSL statute "prohibits you, or any

24    officer, employee, or agent of yours, from disclosing this letter, other than to those to whom

25    disclosure is necessary to comply with the letter or to an attorney to obtain legal advice or legal

26    assistance with respect to this letter."  *Id.*

27

28

1        Appended to the November 2007 NSL is a page titled "ATTACHMENT" that states, "In

2    preparing your response to this National Security Letter, you should determine whether your

3    company maintains the following types of information which may be considered by you to be an

4    electronic communications transactional record in accordance with Title 18 United States Code

5    Section 2709." Opsahl Decl., Ex. A. The page lists, among other things, █████████████

6    ██████████████████████████████████████████████████████████

7    ████████████████████ and "[a]ny other information which you consider to be an

8    electronic communication transactional record." *Id.* The November 2007 NSL requires that the

9    Archive provide the requested information "personally to a representative of the FBI ████████

10    ████ or through use of delivery service or through secure fax" by December 14, 2007 (14

11    business days from receipt of the letter). *Id.*

12        On Tuesday, November 27, 2007, Opsahl and EFF Staff Attorney Marcia Hofmann brought

13    the November 2007 NSL to the Archive and showed it to Brewster Kahle, who is the Chair of the

14    Archive's Board of Directors as well as one of its Digital Librarians. Kahle Decl. ¶ 18; Opsahl

15    Decl. ¶ 8.

16        On Wednesday, November 28, 2007, Special Agent ████ left a message for Bankston

17    inquiring about the status of the Archive's response. Opsahl Decl. ¶ 11. Later that day, Opsahl

18    spoke with Special Agent ████ on the telephone and informed him that the Archive was

19    reviewing and considering the letter and notified him, pursuant to section 2709(c)(4), that the

20    Archive would be bringing in additional counsel. *Id.* ¶ 12.

21        The NSL statute and the November 2007 NSL have prevented the Archive from disclosing

22    information about the November 2007 NSL and this lawsuit to the Archive's board of directors, to

23    its staff, to its patrons, to other libraries, to the press, to members of the public, and to members of

24    Congress. They likewise have prevented the Archive from making it known that it is speaking

25    from experience in publicly advocating for legislative change with respect to the NSL demand and

26    gag power. Kahle Decl. ¶ 21.

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION
TO SET ASIDE NATIONAL SECURITY LETTER

1.                                   ARGUMENT

2   I.     THE NOVEMBER 2007 NSL IS NOT AUTHORIZED BY 18 U.S.C. § 2709

3          The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2712, which was enacted as

4   Title II of the Electronic Communications Privacy Act ("ECPA"), regulates the government's

5   access to stored information maintained by network service providers. Section 2709, which is part

6   of the SCA, governs the FBI's issuance of an NSL. Section 2709(a) provides in pertinent part:

7          Duty to provide.—A wire or electronic communication service provider shall
           comply with a request for subscriber information and toll billing records
8          information, or electronic communication transactional records in its custody or
           possession made by the Director of the Federal Bureau of Investigation under
9          subsection (b) of this section.

10

11         By its terms, section 2709 permits the issuance of an NSL only to a wire or electronic

12  communication service ("ECS") provider.[1]  The Internet Archive, however, is not an ECS provider

13  and hence may not be required to comply with the November 2007 NSL. First, in configuring its

14  site so that patrons can contribute materials by uploading them to the site, the Archive is only a

15  user, not a provider of an ECS. Second, the activity at issue under the November 2007 NSL –

16  permitting patrons ███████████████                        part of the Archive ████████

17  ███████         – is not the provision of an electronic communication service; rather, it is providing

18  storage and preservation services, more akin to providing remote computing storage. The NSL

19  must therefore be set aside.

20       A.     The Archive Is A User, Not A Provider of An Electronic Communication
                Service
21

22         The SCA defines "electronic communication service" as "any service which provides to

23  users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. §

24  2510(15).  The issue here, however, is not whether electronic communications are being sent and

25

26  [1] The reference to a "wire" communication service in section 2709 is redundant, since the
    definition of an "electronic" communication service encompasses "any service which provides to
27  users thereof the ability to send or receive *wire* or electronic communications."  18 U.S.C. §
    2510(15) (emphasis added) (incorporated by reference into the SCA at 18 U.S.C. § 2711).
28

1   received between the Archive and its patrons. They plainly are. The issue is whether the Archive

2   actually *provides* the service that allows the communications to be sent and received or whether, as

3   the case law discussed below makes clear, the Archive, like its patrons, is simply a user of that

4   service.

5        Allowing those who visit a website to provide information to it does not make that website

6   a *provider* of an ECS. This is true whether a visitor is providing information to the site in order to

7   complete a purchase, *see Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263 (N.D. Cal. 2001), or

8   is providing information in connection with downloading streaming "visual programming," *see In*

9   *re Broadcast.com, Inc.*, 2001 WL 36050382 (E.D. Tex. 2001), or is making online airline

10  reservations, *see In re JetBlue Airways Corp. Privacy Litigation*, 379 F. Supp. 2d 299 (E.D.N.Y.

11  2005), or is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the Internet Archive. To the contrary, both the

12  website in question and the person or entity communicating with the site are *users* of an ECS.

13  Here, as in the cases cited above, the entity that enables the communications to take place is the

14  Internet access provider used by the Archive or the visitor to the Archive website. Those access

15  providers are the ECS providers. *See In re Doubleclick Privacy Litigation*, 154 F. Supp. 2d 497,

16  508 (S.D.N.Y. 2001) ("the 'service which provides to users thereof the ability to send or receive

17  wire or electronic communications' is 'Internet access.'"); *In re Broadcast.com, Inc.*, 2001 WL

18  36050382 at *2 (same).

19       In a number of cases, website patrons have alleged that the defendant was an ECS provider

20  that had violated the SCA by unlawfully disclosing personal information provided in connection

21  with obtaining the products or services of the website. In each case, the court rejected the

22  plaintiff's claim because the website in question did not provide an electronic communication

23  service and hence was not subject to the SCA's proscription. *In re JetBlue Corp. Airways Privacy*

24  *Litigation*, 379 F. Supp. 2d 299; *Dyer v. Northwest Airlines Corporations*, 334 F. Supp. 2d 1196,

25  1199 (D.N.D. 2004) ("businesses offering their traditional products and services online through a

26  website are not providing an 'electronic communication service'"); *Crowley*, 166 F. Supp. 2d at

27  1270 (Amazon.com is not an ECS provider, it is an ECS user); *In re Broadcast.com, Inc.*, 2001 WL

28  36050382 at *2, 3 ("Broadcast.com operates a website and, in doing so, does not provide Internet

-7-

1  access to the public. It uses it."); *see also, In re Doubleclick Privacy Litigation,* 154 F. Supp. 2d at

2  508-09 (websites are users of an ECS under ECPA for purposes of determining applicability of

3  exception to prohibition against obtaining access to an electronic communication). As the court in

4  *In re JetBlue Corp. Airways Privacy Litigation* explained:

> Although JetBlue operates a website that receives and transmits data to and from
> its customers, it is undisputed that it is not the provider of the electronic
> communication service that allows such data to be transmitted over the Internet.
> Rather, JetBlue is more appropriately characterized as a provider of air travel
> services and a consumer of electronic communication services. The website that
> it operates, like a telephone, enables the company to communicate with its
> customers in the regular course of business. Mere operation of the website,
> however, does not transform JetBlue into a provider of internet access, just as the
> use of a telephone to accept telephone reservations does not transform the
> company into a provider of telephone service. Thus, a company such as JetBlue
> does not become an "electronic communication service" provider simply because
> it maintains a website that allows for the transmission of electronic
> communications between itself and its customers."

13  *In re JetBlue Corp. Privacy Litigation,* 379 F. Supp. 2d at 307 (fn. omitted). [2]

14      The Archive is no more an ECS provider than were the websites in the cases cited above.

15  Like those websites, the Archive is a user of the Internet so that it may, for example, ▮▮▮.

16  ▮▮▮▮▮▮▮▮▮▮▮ the Archive's collection. Its

17  purpose is not to provide basic connectivity, *i.e.,* access to an electronic communications service

18  to third parties. Its purpose is to act as a repository of information and knowledge, stored in

19  digital form, so that knowledge and information may be preserved and made available to those

20  seeking it, now and for generations to come. Because the Archive is not an ECS provider, the

21  Archive falls outside the parameters of section 2709(a) and hence the NSL at issue here must be

22  set aside as unlawful.

---

[2] The Archive's public Internet website stands in stark contrast to the elaborate, internal American Airlines computerized customer reservation system, known as SABRE, that was at issue in *United States v. Mullins,* 992 F.2d 1472 (9th Cir. 1993). In *Mullins,* the defendant travel agents used the system, access to which they leased from American, to defraud the airline by stealing frequent flyer miles. *Id.* at 1474-75. In upholding the constitutionality of the manner in which evidence against the defendants was obtained from SABRE, the Ninth Circuit assumed, without analysis, that American was a provider of a wire or electronic communications service with respect to the system. *Id.* at 1478. The court's conclusion, with respect to a private, internal system, access to which was leased to others, in no way contradicts the conclusions of the decisions cited in the text.

1    **B.    In Allowing Patrons** ████████████████████████ **the Archive Is**
2    **Providing Storage and Preservation Services and Therefore Is Not an ECS**
     **Provider**

3    The SCA regulates the activities of providers of an "electronic communication service" and

4    those of a "remote computing service" ("RCS").[3]  Section 2709 applies only to ECS providers,

5    however, not to RCS providers, nor to entities that are neither an ECS nor an RCS provider.  In

6    determining whether an entity is an ECS provider, an RCS provider, or neither, the court must

7    examine the nature of the activity in question in order to ascertain whether the statute applies.  That

8    is because an entity may be an electronic communication service provider with respect to some

9    activities but not with respect to others.  As the Department of Justice itself recognizes:

10       Whether an entity is a provider of an "electronic communication service," or a
         provider of "remote computing service," or neither depends on the nature of the
11       particular communication sought [by the government].  For example, a single
         provider can simultaneously provide "electronic communications service" with
12       respect to one communication and "remote computing service" with respect to
         another communication.
13

14   U.S. Dep't of Justice, Criminal Division, Computer Crime and Intellectual Property Section,

15   *Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations*

16   88 (July 2002); *accord, Quon v. Arch Wireless Operating Company, Inc.*, 445 F. Supp. 2d 1116,

17   1136 (C.D. Cal. 2006) ("Congress recognized that service providers can offer a wide variety of

18   different services, each one being characterized differently under the statute." (citing S. Rpt. No.

19   99-541, at 16 (1986)).  As Professor Orin Kerr explains:

20       The distinction between providers of ECS and RCS is made somewhat confusing
         by the fact that most network service providers are multifunctional. . . . The
21       classifications of ECS and RCS are context sensitive: the key is the provider's role
         with respect to a particular copy of a particular communication, rather than the
22       provider's status in the abstract.

23   Orin S. Kerr, *A User's Guide to the Stored Communications Act—and a Legislator's Guide to*

24   *Amending It*, 72 GEO. WASH. L. REV. 1208, 1215 (2004).

25

26   ──────────────
     [3]  As noted above, the Act defines "electronic communication service" as "any service which
     provides to users thereof the ability to send or receive wire or electronic communications." 18
27   U.S.C. § 2510(15).  It defines a "remote computing service" as the "provision to the public of
     computer storage or processing services by means of an electronic communications system." 18
28   U.S.C. § 2711(2).

──────────────
-9-

1    The characteristics the courts rely on to distinguish an RCS from an ECS also demonstrate

2    that the storage and preservation services that the Archive provides to those who ███████

3    ███████████ take the Archive outside the definition of an ECS. The discussion in *Quon v.*

4    *Arch Wireless Operating Co., Inc.*, 445 F. Supp. 2d 1116, is particularly useful. The court there

5    delineates three essential characteristics that distinguish storage by an ECS from storage by an

6    RCS:

7    First, "the centrality a computer plays in facilitating the communication is key to Congress'

8    definition of a remote computing service. . . . [A]t a minimum, a computer must play a central role

9    in facilitating the storage of the communication." *Id.* at 1132-33 (emphasis added). Second, the

10   fact that the material is being stored is a critical factor. *Id.* at 1134. Finally, the length and purpose

11   of the storage must be examined. When an entity provides long term storage that "is not incidental

12   to the transmission of the communication itself, and is not meant for backup protection but . . . as

13   the single place where text messages, after they have been read, are archived for a permanent

14   record-keeping mechanism," it is acting as an RCS. *Id.* at 1136; *accord United States v. Jackson*,

15   2007 WL 3230140 at *3 (D.D.C. 2007) (quoting *Quon* with approval).

16   Like the text message storage service at issue in *Quon* and *Jackson*, the service the Archive

17   provides in ████████████████████ the public takes it outside the definition of

18   an ECS. As in *Jackson* and *Quon*, the Archive provides permanent, archival storage as part of

19   █████████ the collection. Kahle Decl. ¶ 12. This differentiates the Archive from an ECS

20   whose electronic storage of communications is either temporary, intermediate storage in

21   connection with the transmission of a communication or is for purposes of backup protection for

22   the communication. *See Quon*, 445 F. Supp. 2d at 1136. The Archive is intended as the final

23   point where the material is stored—that is, the material becomes part of the Archive's permanent

24   collection.[4]

25   ---

[4]   Although the Archive provides many other services to the public, including the ability to ██████ and

26   ██████████████████ that does not change the fact that the service in question here— ██████████████████████ is one of storage, not the provision of

27   an electronic communication service. Whether the Archive might be considered an ECS provider

      with respect to those services is a question better left for another day. *See United States v. Steiger*,

28   318 F.3d 1039, 1049 (11th Cir. 2003) (equating, in dictum, an electronic bulletin board system with

-10-

1    The FBI cannot obtain from the Archive the particular records it seeks using an NSL issued

2    under 18 U.S.C. 2709(a) because the Archive is not an electronic communication service provider

3    for purposes of maintaining the records sought.

4    **II.    THE ARCHIVE IS NOT SUBJECT TO THE NOVEMBER 2007 NSL BECAUSE IT**
5    **IS A LIBRARY PURSUANT TO 18 U.S.C. § 2709(f)**

6    18 U.S.C. § 2709 contains an additional protection to ensure that libraries cannot be treated

7    as electronic communication service providers for providing essential library services to the public.

8    Specifically, the statute provides:

9    A library (as that term is defined in section 213(1) of the Library Services and
10    Technology Act (20 U.S.C. § 9122(1)), the services of which include access to the
     Internet, books, journals, magazines, newspapers, or other similar forms of
11    communication in print or digitally by patrons for their use, review, examination,
     or circulation, is not a wire or electronic communication service provider for
12    purposes of this section, unless the library is providing the services defined in
     section 2510(15) ("electronic communication service") of this title.
13

14   18 U.S.C. § 2709(f).

15   In turn, the 1996 Library Services and Technology Act defines a "library" as including,

16   *inter alia*, "a private library or other special library, but only if the State in which such private or

17   special library is located determines that the library should be considered a library for purposes of

18   this subchapter." 20 U.S.C. § 9122(1)(E). The Archive has been formally recognized as a library

19   by the State of California for purposes of the 1996 Library Services and Technology Act, and thus

20   satisfies this definition. Kahle Decl., Ex. B. The Archive is therefore the type of library to which

21   18 U.S.C. § 2709(f) applies, and cannot be considered a wire or electronic communication service

22   provider under 18 U.S.C. § 2709(f) unless it provides an "electronic communication service" under

23   18 U.S.C. § 2510(15).

24

25   a telephone company or an ISP); *Konop v. Hawaiian Airlines*, Inc., 302 F.3d 868, 879-80 (9th Cir.
26   2002) (accepting the parties' assumption that host of Web-based message board was an electronic
     communication service provider).

27   *See Quon*, 445 F. Supp. 2d at 1136-37 (A single entity can offer differing services and
     whether it is treated as an ECS or an RCS with respect to that service depends on the nature of the
28   service in question).

-11-

1   As explained above, the Archive does not provide an "electronic communication service"

2   with respect to the ██████████ It provides access to those ██████████ "patrons for their

3   use review, examination or circulation," 18 U.S.C. § 2709(f). Thus, 18 U.S.C. § 2709(f) provides

4   an additional reason why the Court should not classify the Archive as a provider of electronic

5   communication services subject to demands for records under 18 U.S.C. § 2709(a), and the Court

6   must therefore set aside the November 2007 NSL.

7   **III.    THE NOVEMBER 2007 NSL IS UNCONSTITUTIONAL BECAUSE IT VIOLATES THE FIRST AMENDMENT**

8

9   The November 2007 NSL must also be set aside because the statutory authority under

10  which it was issued is unconstitutional on its face. The gag order provision in section 2709(c)

11  violates the First Amendment and cannot be severed from the remainder of the statute. That

12  renders 18 U.S.C. § 2709 unenforceable in its entirety. Notably, the one court that has already

13  considered the constitutionality of the NSL statute concluded that the statute's gag provisions

14  violate the First Amendment and that because those gag provisions are not severable, the entire

15  statute is unconstitutional. *Doe v. Gonzales*, 500 F. Supp. 2d 379 (S.D.N.Y. 2007), *appeal*

16  *pending*. The *Doe* court enjoined the FBI from issuing NSLs under 18 U.S.C. § 2709, but that

17  ruling is stayed pending appeal. That the November 2007 NSL was issued under a facially

18  unconstitutional statute provides yet another reason that the NSL should be set aside.

19  The Court need not, however, decide the question of the facial constitutionality of the NSL

20  statute's gag provisions in the context of this petition. That issue will be briefed in connection with

21  the motion for summary judgment that plaintiffs will be filing in this case, challenging the facial

22  and as-applied constitutionality of 18 U.S.C. § 2709 and of § 3511, which sets forth the procedures

23  and standards governing a challenge to a section 2709(c) a gag order. Accordingly, petitioner's

24  constitutional argument can, most appropriately, be fully explicated in the context of that action.

25  //

26  //

27  //

28

-12-

1                                  **CONCLUSION**

2        For the foregoing reasons, the Archive requests that this Court issue an order setting aside

3   the November 2007 NSL.

4

5                                                    Respectfully submitted,

6                                                    MELISSA GOODMAN
                                                     JAMEEL JAFFER
7                                                    L. DANIELLE TULLY
                                                     American Civil Liberties Union Foundation
8                                                    National Security Project

9                                                    ANN BRICK
                                                     American Civil Liberties Union
10                                                   Foundation of Northern California, Inc.

11                                                   By: _____
                                                          ANN BRICK
                                                          Counsel for Petitioner
12

13                                                   CINDY COHN
                                                     KURT OPSAHL
14                                                   MARCIA HOFMANN
                                                     Electronic Frontier Foundation

15                                                   By: _____
                                                          MARCIA HOFMANN
16   DATED: December 14, 2007                              Counsel for Petitioner

17

18

19

20

21

22

23

24

25

26

27

28
                                          -13-

MELISSA GOODMAN (NY SB # 4224333)*
mgoodman@aclu.org
JAMEEL JAFFER (NY SB # 3064201)*
jjaffer@aclu.org
L. DANIELLE TULLY (NY SB # 4334512)*
dtully@aclu.org
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004-2400
Telephone: (212) 549-2500
Facsimile: (212) 549-2680

ANN BRICK (SB # 65296)
abrick@aclunc.org
American Civil Liberties Union Foundation
  of Northern California, Inc.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

CINDY COHN (SB # 145997)
cindy@eff.org
KURT OPSAHL (SB # 191303)
kurt@eff.org
MARCIA HOFMANN (SB # 250087)
marcia@eff.org
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Counsel for Petitioner
*Pro hac vice applications to be filed upon the assignment of this case to a judge.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

**CW**

| | |
|---|---|
| INTERNET ARCHIVE; AMERICAN CIVIL LIBERTIES UNION; AMERICAN CIVIL LIBERTIES UNION FOUNDATION; AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA, INC.; AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA, INC.; and ELECTRONIC FRONTIER FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL B. MUKASEY, in his official capacity as Attorney General of the United States; ROBERT S. MUELLER III, in his official capacity as Director of the Federal Bureau of Investigation; and ARTHUR M. CUMMINGS II, in his official capacity as Deputy Assistant Director of the Counterterrorism Division of the Federal Bureau of Investigation,<br><br>Defendants. | Case No. _____ 6946<br><br>**DECLARATION OF KURT OPSAHL IN SUPPORT OF PETITION TO SET ASIDE NATIONAL SECURITY LETTER**<br><br>**DOCUMENT SUBMITTED UNDER SEAL** |

SEALED
BY COURT ORDER

1   I, Kurt Opsahl, declare as follows:

2       1.      I am a Senior Staff Attorney at the Electronic Frontier Foundation ("EFF"), and a

3   member in good standing of the California State Bar, and am admitted to practice before this Court.

4   Except as otherwise indicated, I have personal knowledge of the matters stated in this declaration

5   and, if called upon to do so, am competent to testify to all matters set forth herein.

6       2.      EFF is a non-profit civil liberties organization working to protect rights in the digital

7   world. EFF actively encourages and challenges industry and government to support free expression

8   and privacy in the information society. Founded in 1990, EFF is based in San Francisco.

9       3.      I, along with other attorneys at EFF, represent the Internet Archive ("the Archive")

10  on various legal matters.

11      4.      In June of 2007, Special Agent Scott Rakowitz of the San Francisco office of the

12  Federal Bureau of Investigation scheduled a liaison meeting with our office because of our role as

13  counsel to the Archive.  The meeting took place in July of 2007 at the EFF office, with Special

14  Agent Rakowitz and Supervisory Special Agent Chuck Esposito.  As I recall, the meeting also

15  included my colleagues Staff Attorney Kevin Bankston and Legal Director Cindy Cohn.  No

16  employee of the Archive was present.  At that we meeting, we agreed that EFF would accept

17  service on behalf of the Archive of legal process from the United States.  We also discussed the

18  Archive generally, providing an overview of the Archive's operation and how little information the

19  Archive maintains.

20      5.      On Monday, November 26, 2007, I received a voicemail message from Supervisory

21  Special Agent ▮▮▮▮▮▮  I am informed and believe that similar messages were left with my

22  colleagues Senior Staff Attorney Lee Tien and Kevin Bankston.  The messages informed us that an

23  FBI agent would be coming by our office that day.  I am informed and believe that my colleague

24  Kevin Bankston returned the message and spoke with Supervisory Special Agent ▮▮▮▮▮▮

25  learning that an FBI special agent would be serving a National Security Letter at our offices.

26      6.      Later that morning, Special Agent ▮▮▮▮▮▮▮  arrived at our office and met

27  with Mr. Bankston.  At that time, Special Agent ▮▮▮▮ served a National Security Letter ("NSL")

28  on Mr. Bankston as a representative of the Archive.

-1-

1    7.    The NSL, dated November 19, 2007, is printed on FBI letterhead and signed by

2    Arthur M. Cummings II, Deputy Assistant Director Counterterrorism Division.

3    8.    On Tuesday, November 27, 2007, I brought the November 2007 NSL to the Archive

4    and showed it to Brewster Kahle, Chairman of the Board of Directors as well as one of its Digital

5    Librarians. Marcia Hoffman, another EFF staff attorney, also attended that meeting.

6    9.    The NSL directed the Archive to provide information about one of its patrons.

7    Specifically, the NSL states that the Archive is "hereby directed to provide the [FBI] the

8    subscriber's name, address, length of service, and electronic communication transactional records,

9    to include existing transaction/activity logs and all electronic mail (e-mail) header information (not

10    to include message content and/or subject fields)" pertaining to

11                                                                The NSL also includes a certification that

12    "the information sought is relevant to an authorized investigation to protect against international

13    terrorism or clandestine intelligence activities."

14    10.    Attached hereto as Exhibit A is a true and correct copy of the NSL.

15    11.    I am informed and believe that on Wednesday, November 28, 2007, Special Agent

16    ▓▓▓ left a message for Mr. Bankston inquiring about the status of the Archive's response.

17    12.    Later that day, I spoke with Special Agent ▓▓▓ on the telephone and informed

18    him (1) that pursuant to Section 2709(c)(4), the Archive would be bringing in additional counsel;

19    and (2) that the Archive was reviewing and considering the NSL

20    I declare under penalty of perjury under the laws of the State of California that the

21    foregoing is true and correct and that this document was executed in San Francisco, California.

22

23    DATED: December 7, 2007

24                            By_____

25                                Kurt Opsahl

26

27

28

# EXHIBIT A



U.S. Department of Justice

Federal Bureau of Investigation

935 Pennsylvania Ave., N.W.
Washington, D.C. 20535

November 19, 2007

Internet Archive
116 Sheridan Avenue
San Francisco, California

To whom it may concern:

Under the authority of Executive Order 12333, dated December 4, 1981, and pursuant to Title 18, United States Code (U.S.C.), Section 2709 (Section 201 of the Electronic Communications Privacy Act of 1986) (as amended, October 26, 2001), you are hereby directed to provide to the Federal Bureau of Investigation (FBI) the subscriber's name, address, length of service, and electronic communication transactional records, to include existing transaction/activity logs and all electronic mail (e-mail) header information (not to include message content and/or subject fields), for the below-listed address holders:



Please see the attachment following this letter for the types of information that you might consider to be a electronic communications transactional record. We are not directing that you should provide, and you should not provide, information pursuant to this letter that would disclose the content of any electronic communication. Title 18, U.S.C., Section 2510(8) defines content as "any information concerning the substance, purport, or meaning of" a communication. Subject lines of e-mails and message content are content information and should not be provided pursuant to this letter.

If the time period noted above is to the "present," that term is intended to direct production of information to the date of the processing of this letter. If providing information to the date of processing is not feasible, please provide information to the date of receipt of this letter.

While fulfilling your obligations under this letter, please do not disable, suspend, lock, cancel or interrupt service to the above-described subscriber(s) or accounts. A service interruption or degradation may alert the subscriber(s)/account users(s) that investigative action is being taken. If you are not able to fulfill your obligations under this letter without alerting the subscriber/account user, please contact the FBI prior to proceeding.

In accordance with Title 18, U.S.C., Section 2709(b), I certify that the information sought is relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities, and that such an investigation of a United States person is not conducted solely on the basis of activities protected by the First Amendment to the Constitution of the United States.

In accordance with 18 U.S.C. § 2709(c)(1), I certify that a disclosure of the fact that the FBI has sought or obtained access to the information sought by this letter may endanger the national security of the United States, interfere with a criminal, counterterrorism, or counterintelligence investigation, interfere with diplomatic relations, or endanger the life or physical safety of a person. Accordingly, 18 U.S.C. § 2709(c)(1) and (2) prohibits you, or any officer, employee, or agent of yours, from disclosing this letter, other than to those to whom disclosure is necessary to comply with the letter or to an attorney to obtain legal advice or legal assistance with respect to this letter.

In accordance with 18 U.S.C. § 2709(c)(3), you are directed to notify any persons to whom you have disclosed this letter that they are also subject to the nondisclosure requirement and are therefore also prohibited from disclosing the letter to anyone else.

In accordance with 18 U.S.C. § 2709(c)(4), if the FBI asks for the information, you should identify any person to whom such disclosure has been made or to whom such disclosure will be made. In no instance will you be required to identify any attorney to whom disclosure was made or will be made in order to obtain legal advice or legal assistance with respect to this letter.

In accordance with 18 U.S.C. § 3511(a) and (b)(1), you have a right to challenge this letter if compliance would be unreasonable, oppressive, or otherwise unlawful and the right to challenge the nondisclosure requirement set forth above.

In accordance with 18 U.S.C. § 3511(c), an unlawful failure to comply with this letter, including any nondisclosure requirement, may result in the United States bringing an enforcement action.

You are requested to provide records responsive to this request personally to a representative of the FBI ████████████ or through use of a delivery service or through secure fax within fourteen (14) business days of receipt of this letter.

Any questions you have regarding this request should be directed only to the FBI ████████████████████ depending on whether the service is personal or through a delivery service. Due to security considerations, you should neither send the records through routine mail nor disclose the substance of this request in any telephone conversation.

Your cooperation in this matter is greatly appreciated.

Sincerely,

Arthur M. Cummings II
Deputy Assistant Director
Counterterrorism Division

2

## ATTACHMENT

In preparing your response to this National Security Letter, you should determine whether your company maintains the following types of information which may be considered by you to be an electronic communications transactional record in accordance with Title 18 United States Code Section 2709.



-       Any other information which you consider to be an electronic communication transactional record

We are not directing that you should provide, and you should not provide, information pursuant to this letter that would disclose the content of any electronic communication as defined in Title 18 United States Code Section 2510(8). Subject lines of e-mails are content information and should not be provided pursuant to this letter. If the records provided are particularly large we request that you provide this information in electronic format preferably on a CR-ROM or DVD..

1   MELISSA GOODMAN (NY SB # 4224333)*
    mgoodman@aclu.org

2   JAMEEL JAFFER (NY SB # 3064201)*
    jjaffer@aclu.org

3   L. DANIELLE TULLY (NY SB # 4334512)*
    dtully@aclu.org

4   American Civil Liberties Union Foundation
    125 Broad Street, 18th Floor

5   New York, NY 10004-2400
    Telephone: (212) 549-2500

6   Facsimile: (212) 549-2680

                 SEALED

7   ANN BRICK (SB # 65296)    BY COURT ORDER
    abrick@aclunc.org

8   American Civil Liberties Union Foundation
    of Northern California, Inc.

9   39 Drumm Street
    San Francisco, CA 94111

10  Telephone: (415) 621-2493
    Facsimile: (415) 255-8437

11

    Counsel for Petitioner

12  *Pro hac vice applications to be filed upon the assignment of this case to a judge.

CINDY COHN (SB # 145997)
cindy@eff.org
KURT OPSAHL (SB # 191303)
kurt@eff.org
MARCIA HOFMANN (SB # 250087)
marcia@eff.org
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

13

                 UNITED STATES DISTRICT COURT

14           FOR THE NORTHERN DISTRICT OF CALIFORNIA

                    SAN FRANCISCO DIVISION

15  INTERNET ARCHIVE; AMERICAN CIVIL    )  Case No. _____

16  LIBERTIES UNION; AMERICAN CIVIL      )
    LIBERTIES UNION FOUNDATION;         )

17  AMERICAN CIVIL LIBERTIES UNION OF  )  **DECLARATION OF BREWSTER**
    NORTHERN CALIFORNIA, INC.;          )  **KAHLE IN SUPPORT OF PETITION TO**

18  AMERICAN CIVIL LIBERTIES UNION     )  **SET ASIDE NATIONAL SECURITY**
    FOUNDATION OF NORTHERN             )  **LETTER**

19  CALIFORNIA, INC.; and ELECTRONIC    )

20  FRONTIER FOUNDATION,            )  **DOCUMENT SUBMITTED UNDER**
                  Plaintiffs,     )  **SEAL**

21        v.                      )

22  MICHAEL B. MUKASEY, in his official    )
    capacity as Attorney General of the United  )

23  States; ROBERT S. MUELLER III, in his    )
    official capacity as Director of the Federal  )

24  Bureau of Investigation; and ARTHUR M.  )
    CUMMINGS II, in his official capacity as   )

25  Deputy Assistant Director of the         )

26  Counterterrorism Division of the Federal Bureau )
    of Investigation,                 )

27                 Defendants.   )

28

1
2
3    I, Brewster Kahle, declare as follows:

4    1.    My name is Brewster Kahle and I co-founded the Internet Archive ("the Archive").

5    Currently, I serve as Chair of the organization's Board of Directors and as a Digital Librarian.

6    Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if

7    called upon to do so, could and would competently testify thereto.

8
9    2.    Before founding the Archive, I invented the WAIS (Wide Area Information Server)

10    system and, in 1992, founded WAIS Inc., an electronic publishing company sold in 1995 to AOL.

11    Before that, I served as senior engineer for Thinking Machines, a parallel supercomputer maker,

12    between 1983 and 1989. I earned a Bachelor of Science from the Massachusetts Institute of

13    Technology in 1982.

14    3.    In addition to my work at the Archive, I am co-founder, President, Chief Executive

15    Officer and Chair of the Board of Directors of Alexa Internet, now a wholly owned subsidiary of

16
17    Amazon.com. Alexa is a leading provider of Internet navigation and search services.

18    The Archive

19    4.    The Archive, located in San Francisco, California, is a 501(c)(3) nonprofit

20    organization established in 1996 with the purpose of offering permanent access to historical

21    collections that exist in digital format to researchers, historians, and scholars. The Archive is

22    governed by a three-member board of directors, and has more than one hundred employees.

23
24    5.    The Archive was founded to build an "Internet library," which is available to the

25    general public at http://www.archive.org. The Archive's overarching mission is to provide

26    universal access to all knowledge. Attached hereto as Exhibit A is a true and correct copy of the

27
28

1    Internet Archive web page, *About IA*, http://www.archive.org/about/about.php (last visited Dec.

2    11, 2007).

3        6.     To fulfill its mission, the Archive works with national libraries, museums,

4    universities, and the general public to collect and offer free access to materials on the Internet,

5    including texts, audio, moving images, software, and archived web pages in its collections.    To

6    ensure continued access, the Archive provides permanent, archival storage and preservation

7    services for this extensive digital material.

8    

9        7.     The Archive builds and maintains its digital collection in a number of ways. It

10   receives donations to its collections from a multitude of resources, including libraries, educational

11   institutions, private companies and individuals.

12       8.     In 1999, the Archive began to digitize archival and education movies. As part of

13   this work, the Archive has digitized more than 1,900 important public domain archival films from

14   the collection of the Prelinger Archives. These films are now available to the public at no charge

15   for download on the Internet at http://www.archive.org/movies.

16   

17       9.     The Archive also has worked with a number of partners to digitize books and make

18   them available online. The Archive's book collection currently contains over 200,000 volumes

19   from over 70 contributing libraries. The Archive's holdings contain more material than 95% of the

20   world's libraries. Some of the Archive's partners include the Library of Congress, National

21   Archives, and the British Library, among many others. In 2005, the Archive formed the Open

22   Content Alliance to build a joint collection of digitized public domain books.

23   

24       10.    The Archive has been formally recognized as a library by the State of California.

25   Attached hereto as Exhibit B is a true and correct copy of a letter dated December 13, 2006, from

26   Susan Hildreth, State Librarian of California, to Mel Blackwell, Vice President, Schools &

27   Libraries Division, Universal Service Administrative Company. In this letter, Ms. Hildreth certifies

28   

-3-
DECLARATION OF BREWSTER KAHLE

1   that the Archive is a library eligible to receive funding under the Library Services and Technology

2   Act, and also qualifies for E-Rate, a program that provides discounts to schools and libraries to

3   ensure they are able to obtain affordable telecommunications services. In addition, the Archive has

4   been a member of the American Library Association since 2000.

5

6          11.     One of the unique features of the Archive is a service known as the Wayback

7   Machine, which allows people to visit archived versions of websites.  The Archive has created and

8   maintained the Wayback Machine by collecting snapshots of billions of public web pages, except

9   those that have opted not to be archived, every two months for the last ten years.  Thus the

10  Wayback Machine makes it possible to surf more than 85 billion pages stored in the Internet

11  Archive's web archive. Visitors to the Wayback Machine can type in a Uniform Resource Locator

12  (URL), such as a website address, select a date, and then begin surfing on an archived version of

13  the Web.  The archived files, when retrieved by the Wayback Machine, point to other archived

14

15  files, whether HTML (HyperText Markup Language, typically web pages) or images.  If a visitor

16  clicks on a link on an archived page, the Wayback Machine will provide the archived file with the

17  closest available date to the originally requested page.

18         12.     The Archive also accepts donated material from individual patrons, including audio

19  and video recordings that belong in a library.  Thus, members of the public directly contribute

20  resources to the Archive's digital collection.  As with the other materials available on the Archive,

21  the Archive provides permanent, archival storage and preservation services for this digital material

22  to ensure that it remains accessible.

23

24         13.     As a library, the Archive actively works to serve its patrons as a resource for

25  exploration, research, and learning. The Archive seeks to provide a safe environment for its

26  patrons' contribution of and access to digital materials through its website.  Accordingly, an

27  individual wishing to view digital materials on the Archive's website may do so as an "anonymous

28

1    user" – that is to say, without logging in to the website. However, individuals who would like to

2    upload materials, post reviews, or communicate on message boards must first register with the

3    Archive, which includes agreeing to "Terms of Use," providing a "valid" (although unverified) e-

4
5    mail address, creating a password, and supplying a screen name. They can then log in to their

6    accounts to engage in these activities.

7          14.    While the Archive intentionally limits the information that it collects and retains

8    from patrons, from time to time it may possess non-public information about them. Such records

9    may include the date the patron's account was opened, the screen names associated with the

10   patron's account, an unconfirmed email address associated with the patron, and messages of those

11   who communicate with the Archive via email.

12
13                              The November 2007 NSL

14         15.    The Archive has worked with various federal government agencies including the

15   Department of Justice, the Federal Bureau of Investigation and the Central Intelligence Agency.

16   Many U.S. Attorneys and other law enforcement officials find the Archive a valuable resource,

17   and we have regularly received requests for information about our collections, most frequently the

18   Wayback Machine. The Archive has in the past complied with lawful subpoenas.

19
20         16.    Attorneys employed by the Electronic Frontier Foundation ("EFF") represent the

21   Archive for the purpose of responding to government requests for information from the Archive.

22         17.    On or around June 4, 2007, Special Agent Scott Rakowitz of the San Francisco

23   office of the Federal Bureau of Investigation contacted the Archive to schedule a liaison meeting.

24   The Archive asked EFF Senior Staff Attorney Kurt Opsahl to follow up with Special Agent

25   Rakowitz. The meeting eventually occurred on or around July 5, 2007. As a result of that meeting,

26   the FBI agreed to serve any record demands directed to the Archive on the attorneys at EFF as the

27   Archive's counsel for such matters.

28

18.    On November 27, 2007, Kurt Opsahl and EFF staff attorney Marcia Hofmann came to my office to show me a National Security Letter ("NSL") the FBI had served on November 26, 2007.

19.    The NSL directed the Archive to provide information about one of its patrons. Specifically, the NSL states that the Archive is "hereby directed to provide the [FBI] the subscriber's name, address, length of service, and electronic communication transactional records, to include existing transaction/activity logs and all electronic mail (e-mail) header information (not to include message content and/or subject fields)" pertaining to ████████████████████ ██████████████████████████████████████ The NSL also includes a certification that "the information sought is relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities."

20.    In addition, the letter includes a certification that "disclosure of the fact that the FBI has sought or obtained access to the information sought by this letter may endanger the national security of the United States, interfere with a criminal, counterterrorism, or counterintelligence investigation, interfere with diplomatic relations, or endanger the life or physical safety of a person." The letter states that I am prohibited from "disclosing [the] letter, other than to those to whom disclosure is necessary to comply with the letter or to an attorney to obtain legal advice or legal assistance with respect to this letter."

21.    The NSL statute and the November 2007 NSL have prevented me from disclosing information about the November 2007 NSL to anyone other than my attorneys or those to whom disclosure is necessary in order to comply with the letter.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

1    Executed on this day, December 12, 2007.

2

3

4                                           Brewster Kahle

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-7-

# EXHIBIT A

Internet Archive: About IA                                                                      12/13/07 3:58 PM



**Web | Moving Images | Texts | Audio | Software | Education | Patron Info | About IA**



Home            Donate | Forums | FAQs | Contributions | Terms, Privacy, & Copyright | Contact | Jobs | Bios

Search: [                              ]                    ( Upload )      **Anonymous User**
[All Media Types]  (GO!) Advanced Search                                    (login or join us)

**Read More**

Why the Archive is Building an 'Internet Library'

Future Libraries

Storage and Preservation

Related Projects and Research

Researcher Access

Server Statistics

Archive Statistics

Job Opportunities at the Internet Archive

Report Bugs and Request New Features

Usage Logs

**Media Coverage** [more]

Brewster Kahle profiled in GOOD magazine

Podcast of Brewster at South By Southwest!

Nasa and Internet Archive Team to Digitize Space Imagery

OSTI Partners with Internet Archive

Brewster Kahle interviewed in Second Life!

Great Article from WebProNews!

**About the Internet Archive**



The Internet Archive is a 501(c)(3) non-profit that was founded to build an Internet library, with the purpose of offering permanent access for researchers, historians, and scholars to historical collections that exist in digital format. Founded in 1996 and located in the Presidio of San Francisco, the Archive has been receiving data donations from Alexa Internet and others. In late 1999, the organization started to grow to include more well-rounded collections. Now the Internet Archive includes texts, audio, moving images, and software as well as archived web pages in our collections.

**Why the Archive is Building an 'Internet Library'**

Libraries exist to preserve society's cultural artifacts and to provide access to them. If libraries are to continue to foster education and scholarship in this era of digital technology, it's essential for them to extend those functions into the digital world.

Many early movies were recycled to recover the silver in the film. The Library of Alexandria - an ancient center of learning containing a copy of every book in the world - was eventually burned to the ground. Even now, at the turn of the 21st century, no comprehensive archives of television or radio programs exist.

But without cultural artifacts, civilization has no memory and no mechanism to learn from its successes and failures. And paradoxically, with the explosion of the Internet, we live in what Danny Hillis has referred to as our "digital dark age."

The Internet Archive is working to prevent the Internet - a new medium with major historical significance - and other "born-digital" materials from disappearing into the past. Collaborating with institutions including the Library of Congress and the Smithsonian, we are working to preserve a

Cnet Article- Grant Funds
Open-Source Challenge to
Google Library

Ap Story Picked up by
several major publications!

Forbes.com picks up AP
story on the Archive! "When
a website dies, it goes to
Heaven..."

SF Chronicle spotlights Tech
Award winners

Member



record for generations to come.

Open and free access to literature and other writings has long been
considered essential to education and to the maintenance of an open
society. Public and philanthropic enterprises have supported it through
the ages.

The Internet Archive is opening its collections to researchers, historians,
and scholars. The Archive has no vested interest in the discoveries of
the users of its collections, nor is it a grant-making organization.

At present, the size of our Web collection is such that using it requires
programming skills. However, we are hopeful about the development of
tools and methods that will give the general public easy and meaningful
access to our collective history. In addition to developing our own
collections, we are working to promote the formation of other Internet
libraries in the United States and elsewhere.

**Find out**
• How to make a Monetary Donation to the Archvive
• About our announcement and discussion lists on Internet libraries and
movie archives
as well as our user forums

**Future Libraries - How People Envision Using Internet Libraries**

**From ephemera to artifact:** Internet libraries can change the content of
the Internet from ephemera to enduring artifacts of our political and
cultural lives.

> "I believe historians need every possible piece of paper
> and archived byte of digital data they can muster. The
> Smithsonian Institution sees the value, and has affiliated
> with the Archive to preserve the 1996 campaign Web sites,
> official and unofficial."

Dan Gillmor, computing editor, *San Jose Mercury News*, 1 September
1996

**Protecting our right to know:** Most states have pre-Internet sunshine
laws that require public access to government documents. Yet while the
Internet has generally increased public access to information, states have
just begun to amend those laws to reflect today's Internet environment.
According to Bill Chamberlin, director of the Marion Brechner Citizen
Access Project at the University of Florida's College of Journalism and
Communications, such laws are being enacted "piecemeal, one state at
a time," and cover information that varies widely in nature - everything
from "all public records" to specialized information such as education
reports and the licensing status of medical practitioners. In the meantime,
while public officials are posting more information on the Internet than
their state legislatures require, there's little regulatory control over exactly
what is posted, when it's taken off, or how often it's updated. This leaves
a gap that online libraries can help to fill.

**Exercising our "right to remember":** Without paper libraries, it would
be hard to exercise our "right to remember" our political history or hold
government accountable. With much of the public's business now moving

from paper to digital media, Internet libraries are certain to become essential in maintaining that right. Imagine, for instance, how news coverage of an election campaign might suffer if journalists had only limited access to previous statements that candidates had made in the media.

> "The Internet Archive is a service so essential that its founding is bound to be looked back on with the fondness and respect that people now have for the public libraries seeded by Andrew Carnegie a century ago.... Digitized information, especially on the Internet, has such rapid turnover these days that total loss is the norm. Civilization is developing severe amnesia as a result; indeed it may have become too amnesiac already to notice the problem properly. The Internet Archive is the beginning of a cure - the beginning of complete, detailed, accessible, searchable memory for society, and not just scholars this time, but everyone."

> Stewart Brand, president, The Long Now Foundation

**Establishing Internet centers internationally:** What is a country without a memory of its cultural heritage? Internet libraries are the place to preserve the aspect of a country's heritage that exists on the Internet.

**Tracing the way our language changes:** During the late 19th century, James Murray, a professor at Oxford University, built the first edition of the *Oxford English Dictionary* by sending copies of selected books to "men of letters" who volunteered to search them for the first occurrences of words and to trace the migration of their various meanings. Internet libraries could allow linguists to automate much of this extremely labor-intensive process.

**Tracking the Web's evolution:** Historians, sociologists, and journalists could use Internet libraries to hold up a mirror to society. For example, they might ask when different ethnic groups or special interests or certain businesses became a presence on the Internet.

> "We don't know where this Internet is going, and once we get there it will be very instructive to look back."

> Donald Heath, president of the Internet Society in Reston, Virginia

**Reviving dead links:** A few services - such as UC Berkeley's Digital Library Project, the Online Computer Library Center, and Alexa Internet are starting to offer access to archived versions of Web pages when those pages have been removed from the Web. This means that if you get a "404 - Page Not Found" error, you'll still be able to find a version of the page.

**Understanding the economy:** Economists could use Archive data such as link structures - what and how many links a site contains - to investigate how the Web affects commerce.

**Finding out what the Web tells us about ourselves:** Researchers could use data on links and traffic to better understand human behavior and communication.

"Researchers could use the Archive's Web snapshots in combination with usage statistics to compare how people in different countries use the Web over long periods of time.... Political scientists and sociologists could use the data to study how public opinion gets formed. For example, suppose a device for increasing privacy became available: Would it change usage patterns?"

Bernardo Huberman, Xerox Palo Alto Research Center

"The Internet Archive has created a kind of test tube that allows a broad range of researchers to analyze the Web in ways that have never been possible before. What makes this type of research unique is that it often requires the fusion of traditional tools and techniques with new methods, and it results in the development of new theories, techniques, and metrics."

James Pitkow, Xerox Palo Alto Research Center

**Looking back:** With a "way-back machine" - a device that displayed the Web as it looked on a given date - historians and others would literally have a window on the past.

How would you use an Internet library?

**Related Projects and Research**

Internet libraries raise many issues in a range of areas, including archiving technology, copyright, privacy and free speech, trademark, trade secrets, import/export issues, stolen property, pornography, the question of who will have access to the libraries, and more.

Below are links to projects, resources, and institutions related to Internet libraries.

Internet Libraries and Librarianship
Archiving Technology
Internet Mapping
Internet Statistics
Copyright
Privacy and Free Speech

**Internet Libraries and Librarianship**

**Alexa Internet** has catalogued Web sites and provides this information in a free service.
www.alexa.com

**The American Library Association** is a major trade association of American libraries.
www.ala.org

**The Australian National Library** collects material including organizational Web sites.
pandora.nla.gov.au/documents.html

**The Council on Library and Information Resources**

works to ensure the well-being of the scholarly
communication system.
www.clir.org
See its publication **Why Digitize?** at
www.clir.org/pubs/reports/pub80-smith/pub80.html

**The Digital Library Forum (D-Lib)** publishes an online
magazine and other resources for building digital libraries.
www.dlib.org

**Attorney I. Trotter Hardy** explains copyright law and
examines its implications for digital materials in his paper
**Internet Archives and Copyright.**
copyright_TH.php

**The Internet Public Library** site has many links to online
resources for the general public.
www.ipl.org

**Brewster Kahle** is a founder of WAIS Inc. and Alexa
Internet and chairman of the board of the Internet Archive.
See his paper **The Ethics of Digital Librarianship** at
ethics_BK.php

**Michael Lesk** of the National Science Foundation has
written extensively on digital archiving and digital libraries.
www.purl.net/NET/lesk

**The Library of Congress** is the national library of the
United States.
www.loc.gov

**The Museum Digital Library** plans to help digitize
collections and provide access to them.
www.digitalmuseums.org

**The National Archives and Records Administration**
oversees the management of all US federal records. It also
archives federal Web sites including the Clinton White
House site.
www.nara.gov

**The National Science Foundation Digital Library
Program** has funded academic research on digital libraries.
www.nsf.gov/home/crssprgm/dli/start.htm

**National Technical Information Service (NTIS),** U.S.
Department of Commerce, Technology Administration.
NTIS is an archive and distributor of scientific, technical,
engineering and business related information developed by
and for the federal government.
www.ntis.gov

**Network Wizards** has been tracking Internet growth for
many years.
www.nw.com

**Project Gutenberg** is making ASCII versions of classic

literature openly available. www.gutenberg.org

**The Radio and Television Archive** has many links to related resources.
www.rtvf.unt.edu/links/histsites.htm

**Revival of the Library of Alexandria** is a project to revive the ancient library in Egypt.
www.bibalex.org

**The Society of American Archivists** is a professional association focused on ensuring the identification, preservation, and use of records of historical value.
www.archivists.org

**The Royal Institute of Technology Library in Sweden** is creating a system of quality-assessed information resources on the Internet for academic use.
www.lib.kth.se/main/eng

**The United States Government Printing Office** produces and distributes information published by the US government.
www.access.gpo.gov

**The University of Virginia** is building a catalog of digital library activities.
http://www.lib.virginia.edu/digital/

Archiving Technology

**The Association for Computing Machinery (ACM) computing and public policy page** includes papers and news on pending legislation on issues including universal access, copyright and intellectual property, free speech and the Internet, and privacy.
www.acm.org/serving

**The Carnegie Mellon University Informedia Digital Video Library Project** is studying how multimedia digital libraries can be established and used.
www.informedia.cs.cmu.edu

**The Intermemory Project** aims to develop highly survivable and available storage systems.
www.intermemory.org

**The National Film Preservation Board**, established by the National Film Preservation Act of 1988, works with the Library of Congress to study and implement plans for film and television preservation. The site's research page includes links to the board's 1993 film preservation study, a 1994 film preservation plan, and a 1997 television and video study. All the documents warn of the dire state of film and television preservation in the United States.
lcweb.loc.gov/film/filmpres.html

**The National Institute of Standards and Technology**

(NIST) posts IEC International Standard names and
symbols for prefixes for binary multiples for use in data
processing and data transmission.
www.physics.nist.gov/cuu/Units/binary.html

**The Text Retrieval Conference (TREC)** encourages
research in information retrieval from large text collections.
trec.nist.gov

## Internet Mapping

**An Atlas of Cyberspaces** has maps and dynamic tools for
visualizing Web browsing.
www.cybergeography.com/atlas/surf.html

**The Internet Mapping Project** is a long-term project by a
scientist at Bell Labs to collect routing data on the Internet.
www.cs.bell-labs.com/who/ches/map

**The Matrix Information Directory Service** has good maps
and visualizations of the networked world.
www.mids.org

**Peacock Maps** has maps of Internet connectivity.
www.peacockmaps.com

## Internet Statistics

**WebReference** has an Internet statistics page (publisher:
Internet.com).
webreference.com/internet/statistics.html

## Copyright

**The Association for Computing Machinery (ACM)**
**copyright information page** includes text of pertinent laws
and pending legislation.
www.acm.org/usacm/copyright

**Tom W. Bell** teaches intellectual property and Internet law
at Chapman University School of Law.
www.tomwbell.com
His site includes a graph showing the trend of the
maximum US copyright term at
www.tomwbell.com/writings/(C)_Term.html

**Cornell University** posts the text of **copyright law** at
www4.law.cornell.edu/uscode/unframed/17/107.html
www4.law.cornell.edu/uscode/unframed/17/108.html

**The Digital Future Coalition** is a nonprofit working on the
issues of copyright in the digital age.
www.dfc.org

**The National Academy Press** is the publishing arm of the
national academies.
"The Digital Dilemma: Intellectual Property in the
Information Age"
http://www.nap.edu/html/digital_dilemma/

"LC21: A Digital Strategy for the Library of Congress"
www.nap.edu/books/0309071445/html

**Pamela Samuelson** is a professor in the School of
Information Management and Systems at UC Berkeley.
info.berkeley.edu/~pam

**Title 17 of US copyright code**
www.loc.gov/copyright/title17/

**US Government Copyright Office**
www.loc.gov/copyright

## Privacy and Free Speech

**The Association for Computing Machinery (ACM) free-
speech information page** includes the text of pertinent
laws and pending legislation.
www.acm.org/usacm/speech

**The Association for Computing Machinery (ACM)
privacy information page** includes the text of
congressional testimony and links to other resources.
www.acm.org/usacm/privacy

**The Benton Foundation Communications Policy and
Practice Program** has the goal of infusing the emerging
communications environment with public-interest values.
www.benton.org/cpphome.html

**The Center for Democracy and Technology** works to
promote democratic values and constitutional liberties in
the digital age.
www.cdt.org

**The Computers Freedom and Privacy Conference** has a
site containing information on each annual conference held
since 1991.
www.cfp.org

**The Electronic Frontier Foundation** works to protect
fundamental civil liberties, including privacy and freedom of
expression in the arena of computers and the Internet.
www.eff.org

**The Electronic Privacy Information Center**, a project of
the Fund for Constitutional Government, is a public-interest
research center whose goal is to focus public attention on
emerging civil liberties issues and to protect privacy, the
First Amendment, and constitutional values.
www.epic.org

**The Free Expression Policy Project** is a think tank on
artistic and intellectual freedom at NYU's Brennan Center
for Justice. Through policy research and advocacy, they
explore freedom of expression issues including censorship,
copyright law, media localism, and corporate media reform.
www.fepproject.org

**The Internet Free Expression Alliance** is an information and advocacy organization focused on free speech as it relates to the Internet.
www.ifea.net

**The Internet Privacy Coalition** aims to protect privacy on the Internet by promoting the widespread availability of strong encryption and the relaxation of export controls on cryptography.
www.privacy.org/ipc

**The Privacy Page** includes news, alerts, and links to privacy-related resources. Related organizations include the Electronic Privacy Information Center, the Internet Privacy Coalition, and Privacy International.
www.privacy.org

**Privacy International** is a London-based human rights group formed as a watchdog on surveillance by governments and corporations.
www.privacy.org/pi

Please suggest other pages that may be appropriate here.

## Storage and Preservation

The Archive has two practical considerations in dealing with digital collections:

> How to store massive amounts of data
> How to preserve the data for posterity

## Storage

Storing the Archive's collections involves parsing, indexing, and physically encoding the data. With the Internet collections growing at exponential rates, this task poses an ongoing challenge.

Our hardware consists of PCs with clusters of IDE hard drives. Data is stored on DLT tape and hard drives in various appropriate formats, depending on the collection. Web data is received and stored in archive format of 100-megabyte ARC files made up of many individual files. Alexa Internet (currently the source of all crawls in our collections) is proposing ARC as a standard for archiving Internet objects. See Alexa for the format specification.

## Preservation

Preservation is the ongoing task of permanently protecting stored resources from damage or destruction. The main issues are guarding against the consequences of accidents and data degradation and maintaining the accessibility of data as formats become obsolete.

> **Accidents:** Any medium or site used to store data is potentially vulnerable to accidents and natural disasters. Maintaining copies of the Archive¿½s collections at multiple sites can help alleviate this risk. Part of the collection is already handled this way, and we are

proceeding as quickly as possible to do the same with the rest.

**Migration:** Over time, storage media can degrade to a point where the data becomes permanently irretrievable. Although DLT tape is rated to last 30 years, the industry rule of thumb is to migrate data every 10 years. Given developments in computer hardware, we will likely migrate more often than that.

**Data formats:** As advances are made in software applications, many data formats become obsolete. We will be collecting software and emulators that will aid future researchers, historians, and scholars in their research.

**Find out**

How to get free access to the Archive's Internet collections
About our announcement and discussion lists on Internet libraries and movie archives

Terms of Use (10 Mar 2001)

# EXHIBIT B



December 13, 2006

**CALIFORNIA**
**STATE LIBRARY**
FOUNDED 1850

Mr. Mel Blackwell
Vice President, Schools & Libraries Division
USAC
2000 L Street, N.W., Suite 200
Washington, D.C. 20036

Dear Mr. Blackwell,

This letter serves as a certification that the Internet Archive is eligible to receive federal Library Services and Technology Act (LSTA) funding during July 1, 2007 – June 30, 2008.

As a library eligible to receive LSTA funding, it is an eligible entity for E-Rate funding as well.

Please feel free to contact my Library Development Services Bureau Chief, Tom Andersen, should you need further assistance or information. He can be reached at (916) 653-7391 or email at tandersen@library.ca.gov.

Yours truly,

Susan Hildreth
State Librarian of California

cc:    Tom Andersen
       Jacques Cressaty, Internet Archive



**Electronic Frontier Foundation**
Protecting Rights and Promoting Freedom on the Electronic Frontier

December 17, 2007

Special Agent ███████████
Federal Bureau of Investigation
████████████████████████

Re: National Security Letter Dated November 26, 2007 to Internet Archive

Dear Special Agent ███████

This letter is in response to the National Security Letter ("NSL") you served upon the
Internet Archive through its counsel, the Electronic Frontier Foundation ("EFF"), on
November 26, 2007.

As explained below, the Archive is voluntarily providing responsive public information,
but is not providing the non-public information requested by the NSL because the statutes
governing the NSL, 18 U.S.C. §§ 2709 and 3511, are unconstitutional and because the
Archive is not subject to the NSL statute under either 18 U.S.C. § 2709(a) or under 18
U.S.C. § 2709(f).

As an initial matter, we are voluntarily enclosing all the publicly available information
responsive to your request. While this material is available to you directly through the
Internet on the Archive's website, the Archive has voluntarily printed out the enclosed
copies for your convenience and to save you the trouble of finding and printing your own
copies.

We have also determined that the Archive has an extremely limited amount of non-public
information responsive to the NSL. As you may know, the only identifying information
the Archive collects is the email address supplied by the patron, ████████████████
The Archive does not collect the IP addresses used to upload or download files.

After reviewing the information available to the Archive, it appears the responsive non-
public information is the ████████████████████████████████████████
████████████████████████████████████████████████████

The Archive is unable to provide the information pursuant to the NSL for two reasons.

First and foremost, the statue under which this NSL was issued is unconstitutional. As
the United States District Court for the Southern District of New York determined:

454 Shotwell Street • San Francisco, CA 94110 USA
☎ +1 415 436 9333   📠 +1 415 436 9993   🌐 www.eff.org   ✉ information@eff.org

Special Agent ███████
December 17, 2007
Page 2

> § 2709(c) is unconstitutional under the First Amendment because it
> functions as a licensing scheme that does not afford adequate procedural
> safeguards, and because it is not a sufficiently narrowly tailored restriction
> on protected speech. Because the Court finds that § 2709(c) cannot be
> severed from the remainder of the statute, the Court finds the entirety of
> § 2709 unconstitutional.

*Doe v. Gonzales*, 500 F. Supp. 2d 379, 425 (S.D.N.Y. 2007). While the *Doe v. Gonzales*
court stayed its decision pending the government's appeal, the reasoning in the decision
remains sound.

Second, we believe that 18 U.S.C. § 2709 is inapplicable to the Archive in this matter.
The Archive is a library. Under section 2709(f), the FBI cannot demand records from
libraries, unless they are providers of wire or electronic communication services. The
Archive is not a provider of a wire or electronic communication service in the context of
its ███████ library.

Accordingly, on Friday the Archive filed a complaint in the United States District Court
for the Northern District of California asking the court to declare sections 2709 and 3511
unconstitutional. It also filed a petition pursuant to 18 U.S.C. § 3511(a) asking the court
to set aside the NSL. Since the unconstitutional disclosure provisions of the letter also
apply to the Archive's counsel, the counsel are also plaintiffs in the complaint.

Although the Archive has filed these papers to preserve its position and rights, it has not
served them because it remains willing to discuss this matter further. If the government
is willing to withdraw the NSL, including the non-disclosure order, the Archive will
voluntarily dismiss the lawsuit. If you wish to discuss to the possibility of reaching a
mutually agreeable resolution without the need for this litigation to proceed, please
contact me at your earliest convenience, or let me know the appropriate person to talk to
at the Department of Justice.

We are enclosing courtesy copies of the papers that we have filed with the court. If we
are unable to reach an amicable resolution by December 21, 2007, we will formally serve
the documents upon the government.

Sincerely,

Kurt B. Opsahl, Esq.
Senior Staff Attorney
Electronic Frontier Foundation